In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 07-2956

JIMMY KINSLOW,

*Plaintiff-Appellant*,

*v.*

FRANK PULLARA, ERMA SEDILLO, and
SHANNON MCREYNOLDS,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 4023—**Suzanne B. Conlon**, *Judge.*

_____

ARGUED FEBRUARY 27, 2008—DECIDED AUGUST 14, 2008

_____

Before EASTERBROOK, *Chief Judge*, and POSNER and
WOOD, *Circuit Judges*.

WOOD, *Circuit Judge*. Jimmy Kinslow, a state inmate,
brought suit under 42 U.S.C. § 1983, alleging that
certain prison officials violated his constitutional right to
adequate medical treatment while he was being trans-
ferred from one institution to another. He sued employees
of the Illinois Department of Corrections ("IDOC"),
employees of the New Mexico Department of Corrections
("NMDOC"), and TransCor America, LLC, the private
company hired to transport him between facilities, along

with some of TransCor's employees. The district court dismissed Kinslow's claims against the New Mexico officials for lack of personal jurisdiction. The remaining parties reached a settlement with Kinslow, and the court dismissed those claims on June 21, 2007, subject to reinstatement within 30 days. Nothing happened by July 21, 2007, and on August 17, Kinslow filed his notice of appeal from the dismissal of the New Mexico defendants.

**I**

The key facts of this case are not in dispute, though, to the extent that there are different versions, we present them in the light most favorable to Kinslow. For much of his life, Kinslow has been behind bars. He was first incarcerated in 1978 in New Mexico. In 1995 he was transferred to Illinois under the terms of the Interstate Corrections Compact. In June of 2000, while at Stateville Correctional Center in Joliet, Illinois, Kinslow was diagnosed with advanced liver disease caused by hepatitis C. IDOC's medical director prescribed a 12-month chemotherapy regimen for Kinslow. His treatment began in May 2004, but halfway through it, Dr. Frank Pullara, medical director of NMDOC, decided that it would be more economical to treat Kinslow in New Mexico. Pullara contacted NMDOC's general manager, Shannon McReynolds, to arrange for the transfer.

Prison officials in New Mexico and Illinois worked together to arrange Kinslow's transfer back to New Mexico. McReynolds initiated the move by telephoning the IDOC officials twice to set up and confirm the plans. He also selected and arranged for TransCor to transport

Kinslow, via bus, from Illinois to New Mexico. The third New Mexico defendant, Erma Sedillo, was NMDOC's director of operations. Beyond being McReynolds's supervisor, Sedillo was not involved in the logistics of the transfer.

The transfer took place in October 2004. Though Kinslow's bus trip to New Mexico could have been completed in less than 24 hours, the route that TransCor chose lasted six days. Moreover, while the Illinois and New Mexico prison officials were all well aware of Kinslow's prescribed treatment and of how strictly it had to be followed, they failed to establish procedures that would ensure proper medical care for Kinslow during the trip.

Kinslow was being treated with PEG-Intron (delivered by injection) and Rebetol pills. The PEG-Intron is a liquid/powder mixture that must be precisely measured and mixed and then immediately administered. Kinslow was to receive an injection once a week, on the same day and at the same time each week. Because of the precision required for measuring, mixing, and administering this treatment, it was handled by medical staff. In addition, Kinslow took a Rebetol pill once daily with food. Both the PEG-Intron ingredients and the Rebetol pills had to be be kept refrigerated at all times, and, if not taken exactly as prescribed, the treatments could lose effectiveness, fail completely, or cause severe side effects. Kinslow also was to be kept on a proper diet and well-hydrated at all times.

During his transfer, everything that could go wrong with Kinslow's treatment, did. No medical personnel were on the TransCor bus; his medications were not refrigerated (they were put on ice before the bus left

Illinois, but TransCor employees soon dumped the ice because the container was leaking); a TransCor employee spilled Kinslow's Rebetol all over the bus's floor; and TransCor employees told Kinslow that he had to measure, mix, and inject himself with the PEG-Intron because none of them knew how to do it. Kinslow, who had no medical background, was ill-equipped to handle the injection and, sure enough, experienced a severe reaction almost immediately after self-administering the treatment. He had pain and cramps, began to sweat, felt nauseous, and finally vomited. Afterwards, he could barely walk and his abdomen swelled.

The reaction occurred on the evening of October 18, 2004, roughly 27 hours after the trip began. As we noted already, the trip dragged on for six days. Despite Kinslow's persistent requests for medical attention, the TransCor employees responded that they did not have time to find him a physician, and that only TransCor's (nonmedical) employees could provide him with care. When the bus stopped for overnight stays at local jails, Kinslow repeated his requests for medical attention, but again to no avail. In the end, he endured four days of a severe medication reaction with no medical assistance. TransCor employees also refused to give him Clonazepam, a drug that he often took with his treatments because it reduced the anxiety and insomnia that the powerful medications caused. Kinslow believes that his negative reaction resulted from spoiled medication (because of the inadequate refrigeration), an improperly-mixed dose, or perhaps both.

As a direct result of the lack of medical care that Kinslow received during the transfer, his chemotherapy treatments failed. Based on that failure, the NMDOC denied Kinslow additional treatments at the New Mexico facility;

NMDOC believed that even if Kinslow were to receive more treatment, it would be unlikely to succeed because of the interruption of the earlier round. (This may or may not be a well-founded view; whether they were correct is not relevant to the outcome of this appeal.) Kinslow's liver continues to deteriorate, and given that his condition now is untreated, he likely will die. (As of the date of oral argument in this case, Kinslow was alive and in New Mexico, pursuing a separate lawsuit that he filed there before initiating this one. That suit focuses on the post-transfer denial of medical care. We are unaware of the current status of either Kinslow or his other lawsuit.)

Kinslow initiated this action, *pro se*, on December 19, 2005, alleging that the defendants are liable under 42 U.S.C. § 1983 for violations of his Eighth and Fourteenth Amendment rights. On December 1, 2006, the district court dismissed Kinslow's claims against the New Mexico defendants—Dr. Pullara, McReynolds, and Sedillo—for lack of personal jurisdiction. In the same order, the court denied the Rule 12(b)(6) motions to dismiss that were filed by the other defendants, but as we have noted, those parts of the case were later dismissed after a settlement.

## II

We review a district court's determination of personal jurisdiction *de novo*. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002). The plaintiff bears the burden of proving that the jurisdictional requirements are met, but if no facts are in dispute, as is the case here, then the party asserting jurisdiction need only establish a *prima facie* case of personal jurisdiction to satisfy that burden. *Id.* at 713; *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276

(7th Cir. 1997). Kinslow must show that the New Mexico defendants are amenable to process under an appropriate statute, and that it is consistent with due process to require them to submit to litigation in an Illinois court. See *Omni Capital Int'l v. Rudolph Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987).

The crux of the parties' dispute lies with the first of these inquiries: whether the New Mexico defendants are amenable to service of process in Illinois. As the district court properly observed, this inquiry is governed by FED. R. CIV. P. 4(k), which provides, in pertinent part, that service is effective to establish personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located," or "when authorized by a federal statute." FED. R. CIV. P. 4(k)(1)(A), (C). (We cite to the re-styled version of the rules that took effect on December 1, 2007. See *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 518 F.3d 459, 461 n.2 (7th Cir. 2008).) Though some federal statutes expressly provide rules for service of process (such as the Employee Retirement Income Security Act, 29 U.S.C. § 1132(e)(2), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1965(a), and the Securities Exchange Act of 1934, 15 U.S.C. § 78aa), § 1983 is not one of them. When a statute is silent, personal jurisdiction issues are resolved under the laws of the state where the forum is located. See *Omni*, 484 U.S. at 108. Accordingly, the question before us is whether Illinois would permit a court to bring the defendants before it. See FED. R. CIV. P. 4(k).

We turn then to the Illinois long-arm statute, 735 ILCS 5/2-209. As we have noted before, it contains a "catch-all" provision that "permits its courts to exercise jurisdiction

on any basis permitted by the Illinois and United States Constitutions." *Hyatt Int'l Corp.*, 302 F.3d at 714 (citing 735 ILCS 5/2-209(c)). We have yet to find any "operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Id.* at 715 (citing *RAR*, 107 F.3d at 1276). Seeing none here, we once again may collapse the personal jurisdiction analysis under Illinois law into the constitutional inquiry. *Id.* at 715-16. That is the familiar one introduced more than 50 years ago in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and then elaborated in later cases. As we described the current state of the constitutional dimension of personal jurisdiction in *Hyatt*, it requires that

> the defendant must have minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Those contacts may not be fortuitous. Instead, the defendant must have purposefully established minimum contacts within the forum State before personal jurisdiction will be found to be reasonable and fair. Crucial to the minimum contacts analysis is a showing that the defendant should reasonably anticipate being haled into court in the forum State, because the defendant has purposefully availed itself of the privilege of conducting activities there.

302 F.3d at 716 (alterations, citations, and internal quotation marks omitted); see also *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-78 (1985); *Int'l Shoe*, 326 U.S. at 316-19.

There is no suggestion here that the New Mexico defendants have such extensive contacts with Illinois that it would be permissible to exercise jurisdiction over them

without regard to their activities related to Illinois. See
*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408,
414-15 (1984). Instead, we are in the more common situa-
tion where we must assess whether it is "fundamentally
fair to require the defendant to submit to the jurisdiction
of the court *with respect to this litigation.*" *Purdue Research
Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 780 (7th
Cir. 2003) (emphasis in original) (citing *World-Wide Volks-
wagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *Int'l Shoe*,
326 U.S. at 316-17). The crucial question is foresee-
ability—that is, whether the defendants could have antici-
pated being haled into court in Illinois. To determine
whether that is the case, courts look to whether the defen-
dants have "purposefully availed" themselves of the
privileges of conducting activities in the forum state,
and whether they have deliberately engaged in sig-
nificant activities or created continuing obligations there.
*Id.* at 780-81.

Applying that test to the New Mexico defendants, the
district court concluded that their contacts with Illinois
were too "scant" to authorize personal jurisdiction in the
Northern District of Illinois. It found that "no specific
contacts [were] alleged, only that defendants arranged
and planned Kinslow's transfer." The court characterized
the New Mexico defendants' contacts with Illinois as
limited to a mere "handful of phone calls." Moreover, as
it saw the case, these defendants had such a minimal role
in Kinslow's transfer that they "could not have foreseen
being haled into an Illinois court. Their Illinois-related
activities were simply not significant and created no
continuing obligations with respect to this litigation."

Kinslow has argued before this court that there were
indeed the kind of "continuing obligations" that would

justify personal jurisdiction. They arose, in his view, from the New Mexico defendants' contract with the Illinois defendants under the Interstate Corrections Compact. Both New Mexico and Illinois have ratified the Compact and enacted it by statute, see 730 ILCS 5/3-4-4; N.M. STAT. § 31-5-17, and it governed Kinslow's transfer from New Mexico to Illinois in 1995 and from Illinois to New Mexico in 2004. Kinslow devoted the bulk of his opening brief to this argument, the essence of which is that the Compact created a direct, substantial contact between New Mexico and Illinois, as well as an indirect contact by way of a long-standing agency relationship between the New Mexico and Illinois prison officials.

This argument runs into several serious problems. The first is that Kinslow never presented it to the district court, and so it is forfeited. *Omega Healthcare Investors, Inc. v. Res-Care, Inc.*, 475 F.3d 853, 858-59 (7th Cir. 2007). Kinslow's reply brief argues that he did present his Compact-based argument to the district court, but we have reviewed his response to the New Mexico defendants' motion to dismiss for lack of personal jurisdiction, and we did not find even a passing reference to the Compact or to his agency theory. Just as the defense of personal jurisdiction can be waived if not timely asserted, so too can a basis for personal jurisdiction be waived for the same reason.

Though we could choose to review this forfeited claim under the demanding plain-error standard, that would do Kinslow no good. His theory under the Compact relies on agency principles of *respondeat superior* and vicarious liability, but neither one applies to claims based on § 1983. See *Monell v. N.Y. City Dep't Soc. Servs.*, 436 U.S. 658, 691 (1978) (no *respondeat superior* liability); *Hosty v. Carter*, 412

F.3d 731, 733 (7th Cir. 2005) ("[Section] 1983 does not create vicarious liability[.]"). Thus, in addition to being forfeited, the argument fails on its merits. We add that a case based on agency is dubious here in any event, not only because Kinslow has already settled with the IDOC, but also because the only principal-agent relationship the Compact creates is between Illinois and New Mexico, neither of which is before the court and neither of which may be sued under § 1983.

Kinslow also argues that "the New Mexico defendants deliberately engaged in sufficient activities in the forum state to reasonabl[y] anticipate being haled to court there." The New Mexico defendants argue, and the district court agreed, that their contacts were trivial, limited to "two or three phone calls to their Illinois Department of Corrections counterparts." This is not enough, they urge, to establish jurisdiction.

We are not so sure. There are cases holding that "one business transaction related to the cause of action is clearly a sufficient basis for jurisdiction." *Heritage House Rests., Inc. v. Cont'l Funding Group, Inc.*, 906 F.2d 276, 281 (7th Cir. 1990) (collecting cases). In the end, however, none of this matters. The problem that sinks Kinslow's case is not the degree of contact that these three New Mexico officials may have had with Illinois. Instead, it is his failure throughout this litigation to look at each separate person's contacts with Illinois and his assumption that the defendants could instead be treated as a group under the umbrella of the NMDOC. Though his response to the motion to dismiss in the district court and the factual summary in his opening brief on appeal both contain a brief explanation of each defendant's role in the transfer, nowhere do we find information that focuses on each defendant's contacts with Illinois for purposes of personal

jurisdiction. His failure to develop these arguments is fatal to his claim. *United States v. Useni*, 516 F.3d 634, 658 (7th Cir. 2008); *330 W. Hubbard Rest. Corp. v. United States*, 203 F.3d 990, 997 (7th Cir. 2000).

This is not just a technical quibble on our part. For example, our own examination of the record has turned up no basis for an Illinois court to exercise personal jurisdiction over Sedillo. And when Dr. Pullara decided that Kinslow should be moved from Illinois to New Mexico, it was a fellow New Mexican official whom he contacted, McReynolds. The record is very thin about any actions Pullara personally took that had a direct connection with Illinois. Finally, absent a developed argument from Kinslow, we are not willing to assume that McReynolds's contacts were adequate either. Kinslow forfeited his chance to show sufficient personal contacts for each defendant as an individual.

## III

Our conclusion should not be taken as any kind of endorsement of the level of medical treatment Kinslow received during his transfer. But that is not the question before us. We must decide only whether a federal court in Illinois is entitled to adjudicate whatever claims Kinslow may have against the three officials from New Mexico that he has named as defendants. We conclude, on this record, that Kinslow has not met his burden of showing that personal jurisdiction was proper for any of the defendants. We therefore AFFIRM the judgment of the district court.