Liam O'NEIL,
aka Jacob Barrett,
*Plaintiff-Appellant,*

*v.*

Mr. MARTIN,
Corporal;
Mr. Martin, Lieutenant, Unit Supervisor;
Ms. Mancilla, Corporal;
Ms. Benefield, Sergeant;
Mr. Williams, Corporal;
Mr. Wilson, Corporal;
Mr. Sager, Sergeant, Unit Supervisor;
Mr. Cunningham, Lieutenant;
Mr. Hance, Corporal;
Mr. James, Sergeant;
Ms. Meeks, Corporal;
Jimmy Wilson, Case Manager;
Mr. Thorp, Case Manager,
Ms. Estes, Case Manager;
Layne Davison, Unit Manager;
William Taylor, Unit Manager;
Debbie Aldridge, Unit Manager;
David Orman, Mailroom Administrator;
Ms. Pallacio, Psychiatrist;
Linda Morgan, Deputy Warden, Oklahoma State Penitentiary;
Marty Sirmons, Warden, Oklahoma State Penitentiary;
James Vanlandingham, Interstate Compact Administrator,
Oklahoma Department of Corrections;
Johnny Blevins, Administrator of Internal Affairs;
Lesia Miser, Coordinator of Facilities Classification;
Bobbie Boone, Regional Director;
Jamie Keef, Assistant to the Deputy Director;
Oklahoma Department of Corrections;
Debbie Morton, Director's Designee,
Oklahoma Department of Corrections;
Justin Jones, Director, Oklahoma Department of Corrections;
Department of Corrections, an agency of the State of Oregon;

Karin Zeh Potts, Interstate Compact Operations;
Barb Cooney, Capacity and Resource Manager;
Benny Ward, High Risk Population Manager;
Greg Jones, High Risk Placement Manager;
Daryl Borello, Chief Investigator, Office of Inspector General;
Joan Palmateer, Office of Population Administrator;
Stan Czerniak, Assistant Director,
Oregon Department of Corrections;
Mitch Morrow, Deputy Director,
Oregon Department of Corrections;
M. Max Williams, II, Director,
Oregon Department of Corrections;
and John Does 1-20,
*Defendants-Respondents.*

Marion County Circuit Court
09C11417; A143429

312 P3d 538

Christie S. Totten argued the cause for appellant. With her on the briefs was Davis Wright Tremaine LLP.

Christina M. Hutchins, Senior Assistant Attorney General, argued the cause for the Oregon respondents. With her on

the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

John D. Hadden, Assistant Attorney General, Oklahoma Attorney General's Office, Oklahoma, filed the brief for the Oklahoma respondents.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

**NAKAMOTO, J.**

Plaintiff was convicted and sentenced in Oregon, but was later transferred to an Oklahoma prison pursuant to the Interstate Corrections Compact (ICC) Act, ORS 421.245, where he alleges he was mistreated. Plaintiff filed a lengthy complaint against the Oregon Department of Corrections (Oregon DOC) and some of its employees and the Oklahoma Department of Corrections (Oklahoma DOC) and some of its employees, in total naming more than three dozen defendants. The trial court resolved the claims on motions to dismiss under ORCP 21 A. The Oklahoma defendants sought dismissal under ORCP 21 A(2) on the ground that Oregon courts lacked personal jurisdiction over them and under ORCP 21 A(8) on the ground that plaintiff failed to state a claim against them. The Oregon defendants moved to dismiss on the ground that Oregon courts lacked personal jurisdiction over the Oklahoma defendants, ORCP 21 A(2), and that plaintiff failed to state a claim against them, ORCP 21 A(8). The trial court concluded that it lacked personal jurisdiction over the Oklahoma defendants and that plaintiff had failed to state claims against the Oregon defendants. The court dismissed all claims with prejudice and denied plaintiff's request for leave to file an amended complaint.

On appeal, plaintiff asserts that the trial court wrongly dismissed three of his claims against certain Oklahoma and Oregon defendants: one claim alleges violations of his constitutional rights pursuant to 42 USC section 1983, and the other two claims allege negligence related to threats to his safety and interference with his mail from, and representation by, his Oregon attorney. Plaintiff also challenges the trial court's denial of leave to replead. For the following reasons, we reverse the dismissal of the section 1983 claim as to defendants Estes and Sirmons of Oklahoma and Potts and Ward of Oregon; we reverse the dismissal of the negligence claims against Potts, Ward, and Oregon DOC; and we remand for further proceedings.

## I. BACKGROUND

### A. *Factual Background*

When reviewing a trial court's ruling on a motion to dismiss for failure to state a claim, we assume the truth of all

allegations in plaintiff's pleadings and view all reasonable inferences in the light most favorable to plaintiff.[1] *Strizver v. Wilsey*, 210 Or App 33, 35, 150 P3d 10 (2006), *rev den*, 342 Or 474 (2007). Plaintiff was convicted in Oregon and sentenced to the custody of Oregon DOC. In 2007, he was moved to the Oklahoma State Penitentiary pursuant to the ICC, a compact that generally permits states to enter into contracts with other party states for the incarceration of the sending state's inmates. While at the Oklahoma prison, plaintiff made several written requests to have his treatment and cell conditions improved. Specifically, he complained that he was not given showers, "yard" time, and medical attention, and he requested that he be moved to a different cell. Shortly thereafter, plaintiff filed grievances related to his custody and then wrote letters to defendant Sirmons, who was then the warden of the Oklahoma State Penitentiary, asking for a response to his grievances.

While plaintiff was incarcerated in Oklahoma, Simmons, an Oregon attorney, represented plaintiff in several proceedings in Oregon, including his post-conviction relief claim before the Klamath County Circuit Court, his aggravated murder review hearing before the Oregon Board of Parole and Post-Prison Supervision, his petition for executive clemency to the Governor of Oregon, and the current action. Plaintiff regularly received letters and telephone calls from Simmons arranged though Oklahoma DOC. Simmons had verified for Oregon DOC that he was a licensed attorney who represented plaintiff on various legal matters.

In August 2008, Simmons sent plaintiff a package marked "LEGAL MAIL," and that clearly indicated that it was from his law office in Oregon. Defendant Estes, a case manager at the prison, opened the package, read the mail, which allegedly contained attorney-client privileged materials, and said, "This doesn't look legal. I'm confiscating it." After Estes opened the mail, plaintiff explained that any mail sent from his Oregon attorney was related to a lawsuit he was preparing to file in Oregon against Oklahoma DOC and its officials. Plaintiff later wrote to Estes and

---

[1] We provide this background first because it provides context for the motion to dismiss on jurisdictional grounds. The ruling on that motion, as we later explain, carries a different standard of review. 258 Or App at 828.

Sirmons, requesting that they return his legal mail and explain the reasons for its confiscation. After receiving no response, plaintiff filed grievances with both Oklahoma DOC and with defendant Potts, the Oregon Interstate Compact Operations employee who was responsible for administering the ICC between Oregon and Oklahoma. In response to his grievances, Potts encouraged plaintiff to use Oklahoma's grievance procedures instead of Oregon's grievance procedures.

Sirmons then sent a letter to Simmons, requesting information about his attorney-client communications with plaintiff. Specifically, Sirmons asked Simmons to address three issues: (1) "How are the enclosures that were sent considered Legal mail?" (2) "Documentation must be provided showing that you are [plaintiff's] attorney, such as [an] employment/representation contract." (3) "Documentation must be provided stating that you have a license to practice in Oklahoma."

Simmons responded to the request with a 10-page letter and 29 pages of attachments. Sirmons then sent another letter to Simmons stating that he had not adequately explained how the materials in the package Simmons had sent to plaintiff in August constituted "legal mail" and returned the package to Simmons. As a result, plaintiff never received or viewed the materials Simmons had sent him.

At some point, an Oklahoma corrections officer told a number of prisoners who belonged to the United Aryan Brotherhood (UAB) that plaintiff was a "rat" and was transferred to Oklahoma because he was an informant who provided information against "White boys" at an Oregon prison. Afterward, plaintiff was harassed by and began receiving death threats from other inmates, including oral threats and threatening letters. Plaintiff received information that four Oklahoma officers plotted with UAB members to have plaintiff killed by having the officers open the prison cell doors and allowing the inmates an opportunity to attack plaintiff. Plaintiff also received two notes from an inmate named "Fester," who was a UAB member, threatening his life and signing the notes with the symbol for UAB.

After plaintiff received the threatening notes from Fester, he wrote to defendant Ward, who was then the High Risk Population Manager for Oregon DOC, explaining that his life was in danger, and sent Ward the threatening communications he had received. Oregon prison officials provided copies of those notes to Oklahoma prison officials. Plaintiff also asked Ward for a transfer to another prison because he believed that his life was in danger and offered to give Ward the names of staff, inmates, and others who would confirm the activities of UAB gang members. Plaintiff also spoke to Oklahoma DOC Internal Affairs and asked the Internal Affairs officers to move him to either the Joseph Harp Correctional Institution or the Lexington Correctional Center to protect him from UAB members. Thus, both Oregon DOC employees and Oklahoma DOC employees knew of plaintiff's reports that UAB gang members had threatened plaintiff and had seen copies of threatening notes.

Oregon DOC did not investigate the threats that plaintiff had received. The Oklahoma Internal Affairs officers questioned plaintiff and Oklahoma DOC employees but did not question any inmates who had threatened him. After the Internal Affairs officers completed their questioning, they did not conduct any further investigation.

Later on, plaintiff was assaulted by another inmate, who was also a UAB gang member. The day after, plaintiff asked Oklahoma DOC's Internal Affairs to move him to another facility. Simmons also contacted Potts in Oregon and informed her that plaintiff needed to be moved to a protective custody unit because plaintiff had concerns about his safety. In response, Potts told Simmons that she had spoken to the Interstate Compact Administrator in Oklahoma and that they would "actively look into the situation." Oklahoma DOC employees, in turn, refused to move plaintiff or to take any action. After plaintiff filed his complaint in this action, he was transferred to the New Mexico Department of Corrections, where he is currently incarcerated.

B.  *Procedural History*

Plaintiff asserted a variety of tort claims, but, as noted earlier, only three are relevant to this appeal. In his section 1983 claim, plaintiff alleged that, in retaliation for

his complaints about prison conditions, the Oklahoma defendants unlawfully confiscated his legal mail and denied him confidential attorney-client communications. He also alleged that the Oregon defendants failed to investigate his grievances related to the confiscation of his mail. Plaintiff contended that the Oklahoma defendants deprived him of his right "to freedom of speech and expression" and his right "to petition the Government for a redress of grievances." In his two negligence claims, he alleged that both the Oklahoma and the Oregon defendants failed to protect him from known safety threats and failed to investigate his complaints regarding assaults and threats by the Oklahoma inmates. Plaintiff sought declaratory relief, injunctive relief, damages for his section 1983 and negligence claims, and attorney fees and costs for his section 1983 claim.

Oregon DOC and the individual Oregon defendants, including Potts and Ward, filed a motion to dismiss under ORCP 21 A(2) for lack of personal jurisdiction and under ORCP 21 A(8) for failure to state a claim. The Oregon defendants argued that the entire action should be dismissed because (1) the allegations in the complaint demonstrated that Oregon DOC and its employees were not personally involved in causing any of the injuries that plaintiff alleged in his section 1983 and negligence claims; (2) Oregon DOC, a state agency, cannot be sued under 42 USC section 1983; and (3) the court lacked personal jurisdiction over any Oklahoma defendant.

All of the Oklahoma defendants filed a motion to dismiss the claims brought against them, asserting lack of personal jurisdiction, ORCP 21 A(2), and failure to state a claim, ORCP 21 A(8). The Oklahoma defendants argued that the claims should be dismissed because (1) Oklahoma DOC cannot be sued under section 1983, (2) the court lacked personal jurisdiction over any of the Oklahoma defendants, (3) the Oklahoma individual defendants were entitled to qualified immunity, and (4) plaintiff failed to comply with the Oklahoma Governmental Torts Claims Act.

In response, plaintiff conceded that, to the extent that his complaint might be construed to assert a section 1983 claim against the state agencies, Oregon DOC and

Oklahoma DOC, that part of his claim should be dismissed. He argued, however, that his complaint alleged facts sufficient to constitute viable section 1983[2] and negligence claims against the individual Oregon and Oklahoma defendants. Plaintiff also argued that the court had personal jurisdiction over the Oklahoma defendants. In the alternative, plaintiff requested leave to amend the complaint to correct any deficiencies under ORCP 23 A.

In a letter opinion, the trial court ruled on both motions to dismiss. The trial court granted the Oregon defendants' motion to dismiss for failure to state a claim. The trial court determined that plaintiff failed to state a section 1983 claim because he had not properly alleged facts that would demonstrate that the Oregon defendants were personally involved in plaintiff's alleged injuries or that they knowingly violated plaintiff's rights. The trial court also determined that plaintiff failed to state negligence claims because he did not allege facts demonstrating that the Oregon defendants acted unreasonably in light of a foreseeable risk of harm to an interest that the law protects or that they caused his harm.

The trial court also granted the Oklahoma defendants' motion to dismiss on personal jurisdiction grounds. The trial court ruled that Oregon courts lacked personal jurisdiction because the Oklahoma defendants did not have "minimum contacts" with Oregon. The trial court explained that, although there are some regular contacts between Oregon and Oklahoma pursuant to the ICC, "such contacts are not enough, on their own, to establish minimum contacts under the Due Process standards." In addition, the

---

[2] 42 USC section 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

trial court determined that plaintiff's claims "do not stem" from the contacts created by the ICC and, therefore, the contacts between Oklahoma and Oregon were insufficient to exercise personal jurisdiction over them. The trial court did not grant plaintiff's request for leave to amend his complaint and dismissed his complaint with prejudice.

## II.  ANALYSIS

A. *Personal jurisdiction over Oklahoma defendants Sirmons and Estes on the section 1983 claim*

We first turn to plaintiff's assignment that the trial court erred in determining that it lacked personal jurisdiction over two of the Oklahoma defendants, Sirmons, the warden, and Estes, the case manager. Before the trial court, plaintiff argued that the court had personal jurisdiction over all individual Oklahoma defendants for both his section 1983 and negligence claims. On appeal, plaintiff challenges only the dismissal of his section 1983 claim against Sirmons and Estes and does not challenge the trial court's dismissal of the remaining claims against them and all of the other Oklahoma defendants. For that reason, we affirm the trial court's dismissal of those claims and the other defendants from the action. From this point, we refer to Sirmons and Estes together as "Oklahoma defendants."

In reviewing a trial court's grant of a motion to dismiss for lack of personal jurisdiction, we assume the truth of all well-pleaded allegations in the record. *Sutherland v. Brennan*, 131 Or App 25, 28, 883 P2d 1318 (1994), *aff'd on other grounds*, 321 Or 520, 901 P2d 240 (1995). We also "construe pleadings and affidavits liberally to support jurisdiction," *Kotera v. Daioh Int'l U.S.A. Corp.*, 179 Or App 253, 262, 40 P3d 506 (2002), and we review the trial court's factual findings to determine whether they are supported by "'any competent evidence.'" *Sutherland*, 131 Or App at 28 (quoting *Industrial Leasing Corp. v. Miami Ice Machine Co.*, 126 Or App 80, 85, 867 P2d 548 (1993)). Once jurisdictional facts are established, we review the determination of personal jurisdiction for legal error. *Id.* at 29 (citing *Horn and Horn*, 97 Or App 177, 180, 775 P2d 338, *rev den*, 308 Or 465 (1989)).

Personal jurisdiction over an out-of-state defendant may be "general," ORCP 4 A, "specific" under ORCP 4 B through K, or conferred under the "catchall" provision, ORCP 4 L. *State ex rel Circus Circus Reno, Inc. v. Pope*, 317 Or 151, 154-56, 854 P2d 461 (1993). Before the trial court, plaintiff contended that he established that Oregon courts have jurisdiction over Oklahoma defendants pursuant to ORCP 4 A, E, and L. On appeal, he relies solely on ORCP 4 L. That provision provides:

> "Notwithstanding a failure to satisfy the requirement of sections B through K of this rule, in any action where prosecution of the action against a defendant in this state is not inconsistent with the Constitution of this state or the Constitution of the United States."

ORCP 4 L. Accordingly, the trial court had jurisdiction over defendants Sirmons and Estes if the exercise of jurisdiction would comport with the Fourteenth Amendment's Due Process Clause.[3]

Under the Due Process Clause, "a state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum State." *World-Wide Volkswagen Corp. v. Woodsen*, 444 US 286, 291, 100 S Ct 559, 62 L Ed 2d 490 (1980) (quoting *International Shoe Co. v. Washington*, 326 US 310, 316, 66 S Ct 154, 158, 90 L Ed 95 (1945)); *see Willemsen v. Invacare Corp.*, 352 Or 191, 197, 282 P3d 867 (2012), *cert den*, ___ US ___, 133 S Ct 984, 184 L Ed 2d 762 (2013) (stating that specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State's regulation" (internal quotation marks omitted; brackets in original)). When we review a trial court's decision regarding personal jurisdiction over a nonresident defendant, we follow a two-part inquiry:

---

[3] When determining whether a court may exercise jurisdiction over a defendant under ORCP 4 L, this court is guided by decisions of the United States Supreme Court that address the constitutionality of such exercise under the Due Process Clause. *See State ex rel Jones v. Crookham*, 296 Or 735, 742, 681 P2d 103 (1984) (Linde, J., concurring) (noting that, because Oregon does not have a due process clause, the limit of due process under ORCP 4 L is "an issue of federal law to be decided pursuant to the controlling decisions of the United States Supreme Court").

"First, the defendant must have 'minimum contacts' with the forum state. 'Minimum contacts' will be found where the defendant has 'purposefully directed' its activities at residents of the forum state *and* where the litigation 'arises out of or relates to' those activities. \* \* \* Second, even if minimum contacts exist, the exercise of jurisdiction must be reasonable; in the light of various factors deemed relevant by the Court, the exercise of jurisdiction must comport with 'fair play and substantial justice.'"

*Circus Circus Reno*, 317 Or at 159-60 (quoting *Burger King Corp. v. Rudzewicz*, 471 US 462, 472, 476-77, 105 S Ct 2174, 85 L Ed 2d 528 (1985)) (emphasis in original). Thus, when a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff has the burden to show facts from which the court could find that (1) the defendant "purposefully directed its activities" at the forum state and (2) "the litigation arises out of or relates to those activities" that the defendant directed to the forum. *See Nike USA, Inc. v. Pro Sports Wear, Inc.*, 208 Or App 531, 533, 145 P3d 321 (2006) (stating that the plaintiff has the burden of alleging facts sufficient to establish personal jurisdiction). If a plaintiff meets that burden of production, then the burden shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *See Burger King Corp.*, 471 US at 477 ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.").

We first determine whether Oklahoma defendants purposefully directed their activities at Oregon. That inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Nike USA*, 208 Or App at 539 (internal quotation marks omitted).

Plaintiff contends that Oregon courts have personal jurisdiction over Oklahoma defendants because they purposefully directed their activities at his Oregon attorney, Simmons. Plaintiff argues that Estes directed her activities at Oregon when she read and confiscated the package containing attorney-client privileged material that Simmons

had sent plaintiff. Plaintiff also argues that Sirmons directed his activity to Oregon by contacting his Oregon attorney for information about "legal mail" he had sent plaintiff and later returning the "legal mail" to him.

Oklahoma defendants present a twofold response. First, they argue that plaintiff failed to establish general jurisdiction over them because all of their alleged actions had occurred in Oklahoma, and the few communications that they had had with plaintiff's attorney were "inconsequential" and "can in no way be characterized as sufficiently systematic or continuous to establish jurisdiction." Secondly, Oklahoma defendants contend that plaintiff primarily relies on his custody in Oklahoma pursuant to the ICC as a basis for personal jurisdiction. According to Oklahoma defendants, they did not "purposefully avail" themselves of any benefits or protections from Oregon when Oklahoma entered the ICC, and therefore the ICC, by itself, cannot be a basis for personal jurisdiction, citing *Kinslow v. Pullara*, 538 F3d 687, 691 (7th Cir 2008), *Hannon v. Beard*, 524 F3d 275, 280 (1st Cir), *cert den*, 555 US 1069, 129 S Ct 726, 172 L Ed 2d 726 (2008), *Trujillo v. Williams*, 465 F3d 1210 (10th Cir 2006), and *Ali v. District of Columbia*, 278 F3d 1, 7 (DC Cir 2002), for support.

We disagree with both of Oklahoma defendants' contentions; they miss the mark as to plaintiff's argument on appeal. First, plaintiff does not contend on appeal that Oregon has *general jurisdiction* over Oklahoma defendants based on either the ICC or their "continuous or systematic" contacts with the forum. *See* ORCP 4 A(4) (assuming general jurisdiction over any defendant who is "engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise"); *cf. Helicopteros Nacionales de Columbia v. Hall*, 466 US 408, 414-15, 414 n 9, 104 S Ct 1868, 80 L Ed 2d 404 (1984) (explaining when a nonresident defendant's "continuous and systematic" contacts within the forum state are sufficient to give rise to general jurisdiction over that defendant). Second, plaintiff does not contend that Oklahoma defendants "purposefully availed" themselves of the benefits or protections of Oregon by entering into the ICC. Instead, plaintiff asserts that Oregon has jurisdiction over Oklahoma defendants under the "catchall" provision and

points to *specific contacts* by Sirmons and Estes directed at plaintiff's Oregon attorney to show that they *purposefully directed* their activities at the forum state. *See Circus Circus Reno*, 317 Or at 160 n 4 ("The purposeful direction of some activities at residents of Oregon may establish 'minimum contacts' even if those activities are not 'substantial' enough to create general jurisdiction under ORCP 4 A(4)."); *Pebble Beach Co. v. Caddy*, 453 F3d 1151, 1155 (9th Cir 2006) ("Under the first prong of the 'minimum contacts' test, [the plaintiff] has the burden of establishing that * * * [the defendant] has either (1) 'purposefully availed' himself of the privileges of conducting activities in the forum, or (2) 'purposefully directed' his activities toward the forum.").

We agree with plaintiff and conclude that Oklahoma defendants' specific contacts with his Oregon attorney were sufficient to show that they were purposefully directed at Oregon.[4] We have acknowledged that even a "single contact with the forum state" may be sufficient to exercise jurisdiction over a nonresident defendant. *Portland Trailer & Equipment v. A-1 Freeman Moving*, 166 Or App 651, 657, 5 P3d 604, *adh'd to as modified on recons*, 168 Or App 654, 4 P3d 741 (2000) (citing *State ex rel Michelin v. Wells*, 294 Or 296, 302, 657 P2d 207 (1982)). In *Portland Trailer & Equipment*, the defendants, who were Oklahoma residents, filed an action in Oklahoma against the plaintiffs for fraud and breach of contract, which was ultimately dismissed without prejudice. 166 Or App at 653-54. The plaintiffs subsequently filed an action in Oregon against the defendants for wrongful use of a civil proceeding. *Id.* at 654. We held that Oregon had jurisdiction over the defendants under ORCP 4 L, *id.* at 656, concluding that the defendants purposefully directed their activities to the forum because they had "deliberately effected service of summons and complaint in the Oklahoma action on [the] plaintiffs within Oregon * * * [and] consciously directed correspondence, pleadings, and discovery requests to [the] plaintiffs through their Oregon attorney," *id.* at 657.

_____

[4] Although "purposeful availment" is sometimes conflated with "purposeful direction," "availment and direction are, in fact, two distinct concepts." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F3d 797, 802 (9th Cir 2004). A purposeful availment analysis is most often used for actions involving contracts, whereas a purposeful direction analysis is most often used for actions involving torts. *Id.* Section 1983 claims have been analogized to tort claims for personal jurisdiction purposes. *Hannon*, 524 F3d at 282.

Here, Estes deliberately opened and confiscated a package of materials sent by plaintiff's Oregon attorney, which was clearly marked "legal mail" and addressed from an Oregon law office. Estes knew that her actions had an effect in Oregon because, after she opened plaintiff's mail, plaintiff explained that any mail sent from his attorney was related to a lawsuit he was preparing to file in Oregon against the Oklahoma DOC and its officials; nonetheless, she retained the mail and refused to let plaintiff inspect it. At that time, Simmons also was representing plaintiff in other proceedings in Oregon, including his post-conviction relief action in Klamath County Circuit Court, his aggravated murder review hearing before the Oregon Board of Parole and Post-Prison Supervision, and his petition for executive clemency to the Governor of Oregon. Even though Estes's acts occurred in Oklahoma, her interference with plaintiff's mail was aimed at, and had an effect on, the Oregon lawyer's activities and plaintiff's legal action in Oregon. *See Pebble Beach Co.*, 453 F3d at 1156 (holding that a defendant's action that is both "expressly aimed at the forum state" and "caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state" is sufficient to assert jurisdiction over that defendant).

Sirmons also directed correspondence to plaintiff's Oregon attorney at his law office in Oregon. In that letter, Sirmons requested, among other things, that Simmons provide proof that he was licensed to practice law in Oklahoma to establish that the package was legal mail. Plaintiff's attorney prepared a lengthy response and explained that, even though he was not licensed in Oklahoma, his communications with plaintiff were privileged. Sirmons sent another letter to Simmons stating that his response and supporting materials did not adequately explain how the package was "legal mail" and returned the package to him. Those communications rise to the level of purposeful direction because they were intentionally aimed at Oregon, *see Circus Circus Reno*, 317 Or at 160 (stating that contacts such as placing calls and mailing items to Oregon may be sufficient to establish minimum contacts), and had an effect on plaintiff's representation for his Oregon case.

We next determine whether plaintiff's action "arises out of" or "relates to the activities" that Oklahoma defendants directed at the forum. We conclude that plaintiff's action relates to Oklahoma defendants' forum-related activities, given their substantive relevance to plaintiff's cause of action. *See Michelin*, 294 Or at 303 (a defendant's single contact with Oregon that is substantively relevant to the claim may be sufficient for personal jurisdiction); *Portland Trailer & Equipment*, 166 Or App at 657 (same).

In his complaint, plaintiff alleged that he suffered economic damages because, among other things, the two Oklahoma defendants deprived him of "any opportunity for a confidential attorney-client relationship" and, therefore, deprived plaintiff of his right "to freedom of speech and expression" under the First Amendment. Had they not confiscated plaintiff's legal mail and, after soliciting information from his attorney, returned his legal mail to his attorney, plaintiff would not have suffered the alleged damages. Accordingly, plaintiff established the minimum contacts required for personal jurisdiction in Oregon.

Because we conclude that plaintiff met his burden to establish that both Estes and Sirmons had sufficient contacts with Oregon, we now determine whether the exercise of jurisdiction would be reasonable. Courts may exercise jurisdiction over a nonresident defendant if it comports with traditional notions of "fair play and substantial justice." *Burger King Corp.*, 471 US at 476 (citing *International Shoe Co.*, 326 US at 320). "[T]he foreseeability that is critical to due process analysis" in tort cases is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp.*, 444 US at 297.

As to reasonableness, Oklahoma defendants contend that exercising jurisdiction over them would "create an untenable situation" for the states that "routinely transfer prisoners under the ICC" and for correctional officers employed at facilities that house prisoners under the ICC. We disagree. Again, their argument rests on the assumption that plaintiff relies on the existence of the ICC alone

to establish personal jurisdiction. However, plaintiff asserts that Oregon courts have personal jurisdiction over Oklahoma defendants for their individual acts directed at Oregon. Both Estes and Sirmons intentionally interfered with plaintiff's legal mail related to the filing of this action in Oregon. Because Simmons could not adequately communicate with his client, Sirmons's and Estes's interference with Simmons's attorney-client relationship also had an effect on his representation of plaintiff in other legal actions in Oregon. Oklahoma defendants had reason to expect that that interference would cause plaintiff harm in Oregon. Because Oklahoma defendants could reasonably foresee being haled into Oregon courts for confiscating and returning plaintiff's legal mail so that plaintiff could not communicate with his Oregon attorney, the exercise of jurisdiction over them is reasonable under ORCP 4 L. As a result, the trial court erred in granting Oklahoma defendants' motion to dismiss for lack of personal jurisdiction.

B. *Dismissal of plaintiff's section 1983 and negligence claims against Potts, Ward, and Oregon DOC and the section 1983 claim against Oklahoma defendants for pleading defects*

We next address plaintiff's assignment that the trial court erred in dismissing, with prejudice, plaintiff's section 1983 claim against Oklahoma defendants and two individual Oregon defendants, Potts and Ward, and his negligence claims against those two individual Oregon defendants and Oregon DOC based on pleading defects.[5] Plaintiff contends that, even if his complaint failed to allege sufficient facts to withstand a motion to dismiss, the trial court abused its discretion in denying his request for leave to amend his complaint.

Before we reach the merits of plaintiff's argument, we first address whether his claims are moot. Oklahoma defendants argue that plaintiff's claims for relief are moot

---

[5] Similar to his stance on appeal with respect to Oklahoma defendants, plaintiff limits his appeal to the dismissal of the section 1983 claim against only two Oregon defendants, Potts and Ward, and the negligence claims against only Potts, Ward, and Oregon DOC. For that reason, we affirm the trial court's dismissal of the remaining claims and the other Oregon defendants from the action.

because, after filing his complaint, he was transferred to the New Mexico Department of Corrections. Plaintiff responds that, although he has been transferred to another facility, his claims are not moot because he seeks damages in addition to injunctive and declaratory relief.

We agree with plaintiff. A case is moot if the court's decision fails to have a practical effect on the rights of the parties to the controversy. *Brumnett v. PSRB*, 315 Or 402, 405-06, 848 P2d 1194 (1993). A change in circumstance may eliminate the need for injunctive or declaratory relief, and thus those claims for relief may become moot, but a claim for monetary relief to compensate for past injury will prevent the dismissal of the entire action. *E.g., Martin v. Sargent*, 780 F2d 1334, 1337 (8th Cir 1985) (section 1983 claim not moot); *Johnson v. Moore*, 948 F2d 517, 519 (9th Cir 1991) (same); *see also Bates v. Gordon*, 212 Or App 336, 341-42, 157 P3d 1219 (2007) (appeal not moot because controversy over a money judgment was the basis for continuing adjudication of the merits). Accordingly, plaintiff's claims are not moot to the extent that he alleges a right to recover damages as a remedy, even though he has been transferred to another facility.

We now turn to the merits of plaintiff's argument. Plaintiff contends that the trial court abused its discretion in dismissing his complaint under ORCP 21 A *with prejudice* because it failed to grant his motion for leave to file an amended complaint. *See Dean v. Guard Publishing Co.*, 73 Or App 656, 660, 699 P2d 1158 (1985) (stating that courts should "seldom dismiss a complaint *with prejudice* on a defendant's first pleading motion" and that it was an abuse of discretion to do so (emphasis in original)). In response, Oregon defendants argue that, because plaintiff fails to identify any additional facts that he could have alleged to demonstrate a viable section 1983 claim or negligence claims, repleading cannot cure his claims against them. Oklahoma defendants also argue that, because plaintiff "had ample opportunity to identify the persons and actions which would cure the defects in his complaint," the trial court did not err in denying his request to amend.

Under ORCP 21 A, when a trial court grants a motion to dismiss, "the court may enter judgment in favor of the moving party *or* grant leave to file an amended complaint" pursuant to ORCP 23 A. ORCP 21 A (emphasis added). However, under ORCP 23 A, a party may amend a pleading once as a matter of right before a responsive pleading is served. We conclude that plaintiff had a right to file an amended complaint under ORCP 23 A given the procedural posture of the motions and the court's ruling and that the trial court lacked discretion to dismiss the complaint with prejudice.

In *Lamka v. KeyBank*, 250 Or App 486, 492, 281 P3d 639 (2012), we harmonized the requirements of ORCP 21 A and ORCP 23 A. In that case, the defendant filed a motion to dismiss under ORCP 21 A(8), and the trial court granted the motion without specifying whether it was granted with or without prejudice. *Lamka*, 250 Or App at 489-90. The plaintiff then filed his amended complaint, and the defendant filed an answer, which was its first responsive pleading. *Id.* at 490. The trial court dismissed the plaintiff's claims, concluding that the plaintiff lacked the authority to file an amended complaint because he never sought the right to replead after the defendant's motion to dismiss was granted. *Id.*

On appeal, the plaintiff argued that he could file an amended complaint once as a matter of right under ORCP 23 A before the defendant filed its responsive pleading. *Lamka*, 250 Or App at 490. We concluded that

"a party may amend a complaint once as a matter of right before a responsive pleading is served, even if the court has dismissed the complaint. It is only if the trial court grants a motion to dismiss after the plaintiff has already filed an amended complaint or the defendant has filed a responsive pleading, that, under ORCP 21 A, the plaintiff must file a motion for leave to file an amended complaint."

*Id.* at 492 (citing *Caldeen Construction v. Kemp*, 248 Or App 82, 90, 273 P3d 174 (2012)).

Here, plaintiff had never filed an amended complaint before the trial court granted both motions to dismiss,

and neither the Oregon defendants nor the Oklahoma defendants had served a responsive pleading before they moved to dismiss plaintiff's complaint. *See* ORCP 13 B (listing a complaint and an answer as the types of pleadings allowed in an action). Thus, under ORCP 23 A, plaintiff had to be allowed an opportunity to amend his complaint once, as a matter of right, before the trial court dismissed his complaint with prejudice. As a result, the trial court erred in dismissing plaintiff's complaint with prejudice and refusing to allow plaintiff an opportunity to file an amended complaint.

In sum, we conclude that the trial court erred in concluding that it lacked personal jurisdiction over Oklahoma defendants Estes and Sirmons under ORCP 4 L. We also conclude that the trial court erred in refusing to allow plaintiff his right to file an amended complaint to allege a claim under section 1983 against Estes, Sirmons, Potts, and Ward and to allege negligence claims against Potts, Ward, and Oregon DOC.

Judgment dismissing plaintiff's section 1983 claims against Estes, Sirmons, Potts, and Ward and plaintiff's negligence claims against Potts, Ward, and Oregon Department of Corrections reversed and remanded; otherwise affirmed.