On appellant's motion to strike supplemental affidavit of Mark Johnson and for related relief filed November 29, 2000, husband's motion to strike granted in part; husband's motion for extension of time to file reply and to file objection to wife's petition for attorney fees granted; husband's request for attorney fees denied March 21, 2001

## In the Matter of the Marriage of

### H. Gerald BIDWELL,
*Appellant,*

*and*

### Marilyn D. BIDWELL,
*Respondent.*

### (9611-72413; CA A100737)

21 P3d 161

Jacob Tanzer for motion.

Mark Johnson *contra*.

Before Brewer, Presiding Judge, and Armstrong and Kistler, Judges.

BREWER, P. J.

290

## BREWER, P. J.

Wife has petitioned for attorney fees under ORS 107.105(5),[1] following our decision on the merits of husband's appeal from a judgment dissolving the parties' marriage. We affirmed the trial court's judgment, designated wife as the prevailing party, and awarded wife costs. *Bidwell and Bidwell*, 170 Or App 239, 12 P3d 76 (2000), *on recons* 172 Or App 292 (2001). In support of her petition for attorney fees, wife filed a "supplemental affidavit" in which her attorney asserted that husband had not pursued the appeal or settlement in an objectively reasonable manner. Three written settlement communications between the parties' attorneys were attached to the affidavit. Two of the attached letters had been sent while the appeal was held in abeyance pending mediation.[2] Husband has moved to strike the letters and references to them from the affidavit on the ground that they contain confidential settlement communications.

■■ When a party seeks attorney fees under a statute, such as ORS 107.105(5), that authorizes a discretionary award of attorney fees, the court must consider the objective reasonableness and diligence of the parties and their attorneys during the proceedings generally and in pursuing settlement of the dispute. ORS 20.075(1)(e) and (f). Husband's motion to strike presents the issue of whether a party relying on ORS 20.075(1)(e) and (f) may introduce evidence of communications between the parties exchanged in the course of settlement discussions or mediation of the case. For the reasons explained below, the motion to strike is granted in part and denied in part.[3]

---

[1] ORS 107.105(5) provides:

"If an appeal is taken from the decree or other appealable order in a suit for annulment or dissolution of a marriage or for separation, and the appellate court awards costs and disbursements to a party, it may also award to that party, as part of the costs, such additional sum of money as it may adjudge reasonable as an attorney fee on the appeal."

[2] The mediation took place pursuant to this court's Appellate Settlement Conference Program. *See generally* ORAP 15.05.

[3] Wife filed a response to the motion. Husband then moved for leave to file a reply and also moved for an extension of time to file a response to wife's petition for attorney fees, contingent upon our disposition of his motion to strike. In addition, husband seeks attorney fees in connection with the motion to strike. The motions for leave to file a reply and for an extension of time are granted. Husband's request for attorney fees is denied.

The first ten paragraphs of counsel's supplemental affidavit contain information of a sort typically submitted in support of a petition for attorney fees, such as a description of the nature of the case, a statement of the experience and skills of the attorneys who worked on the appeal, a statement of the attorneys' hourly rates, and assertions that those rates are reasonable. Paragraphs 11 through 21 of the affidavit are based on ORS 20.075(1), which sets forth various factors that courts must consider under a statute authorizing discretionary awards of attorney fees. Specifically, wife relies on ORS 20.075(1)(e) and (f), which provide:

"(1)  A court shall consider the following factors in determining whether to award attorney fees in any case in which attorney fees are authorized by statute and in which the court has discretion to decide whether to award attorney fees:

"* * * * *

"(e)  The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

"(f)  The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute."

The first of the letters attached to the affidavit, dated December 9, 1998, was written by wife's trial attorney to husband's trial attorney. The other two letters, dated April 16, 1999, and May 7, 1999, respectively, were written by one of husband's appellate attorneys to wife's then-appellate attorney. The December 1998 and April 1999 letters explored possibilities for settling the parties' continuing dispute. The May 1999 letter may be fairly characterized as explaining why husband's attorney believed that husband would prevail on appeal and as withdrawing his last settlement offer. The 1998 letter was written *before* the case was referred to the appellate mediation program. The two 1999 letters were written after referral of the case to mediation and after a mediation conference had taken place.

Husband contends that the settlement letters are inadmissible under OEC 408.[4] He argues that ORS

---

[4] OEC 408 provides:

20.075(1)(e) and (f) did not create an "exception" to OEC 408 for attorney fee disputes. Husband asserts that, although OEC 408 may make it more difficult to comply with ORS 20.075(1)(e) and (f), litigants must accommodate that limitation because of the value the legislature has placed on protecting frank exchanges during settlement negotiations.

Wife responds that OEC 408 prohibits only the use of evidence of settlement negotiations for the purpose of proving liability on the claims that were the subject of the negotiations. According to wife, OEC 408(2)(b) permits use of evidence of settlement negotiations for a different purpose, such as here, to prove husband's liability for her attorney fees on appeal. Wife relies on *Weems v. American International Adjustment Co.*, 123 Or App 83, 86-87, 858 P2d 914 (1993), *aff'd on other grounds* 319 Or 140, 874 P2d 72 (1994). *Weems* was a workers' compensation case in which the claimant challenged the Workers' Compensation Board's disapproval of a third-party settlement. In an effort to demonstrate the unreasonableness of the proposed settlement, the insurer had offered evidence of the terms of the claimant's wife's settlement of her claim for loss of consortium with the same third party. The Board received the evidence over the claimant's objection. On review, we upheld the Board's admission of the evidence, stating that "OEC 408 proscribes the admission of offers of compromise *to prove liability on the same claim.* Evidence of claimant's wife's settlement was not offered for that purpose here." 123 Or App at 86 (emphasis added).

---

"(1)(a) Evidence of furnishing or offering or promising to furnish, or accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.

"(b) Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

"(2)(a) Subsection (1) of this section does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations.

"(b) Subsection (1) of this section also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."

Similarly, here, wife did not offer the letters to "prove liability for or invalidity of" any of the claims at issue on appeal from the dissolution judgment. Although wife challenges the *objective reasonableness* of husband's claims, we have already rejected those claims on their merits. Wife offered the evidence for a different purpose, namely, to establish husband's liability for wife's attorney fees on appeal. OEC 408 does not bar admission of the letters for the purpose of determining the objective reasonableness of the parties' positions under ORS 20.075(1)(e) and (f).

Husband also contends that, because the April and May 1999 letters were sent while the appeal was held in abeyance pending mediation, those letters are inadmissible under ORS 36.220 and ORS 36.222, which govern the admissibility of "mediation communications."

■ ORS 36.220 provides, in part:

"(1)   Except as provided in ORS 36.220 to 36.238:

"(a)   Mediation communications are confidential and may not be disclosed to any other person.

"* * * * *

"(3)   Statements, memoranda, work products, documents and other materials, otherwise subject to discovery, that were not prepared specifically for use in a mediation, are not confidential."

ORS 36.222(1) provides:

"(1)   Except as provided in ORS 36.220 to 36.238, mediation communications and mediation agreements that are confidential under ORS 36.220 to 36.238 are not admissible as evidence in any subsequent adjudicatory proceeding, and may not be disclosed by the parties or the mediator in any subsequent adjudicatory proceeding."

ORS 36.110(8) defines "mediation communications" as:

"(a)   All communications that are made, in the course of or in connection with a mediation, to a mediator, a mediation program or a party to, or any other person present at, the mediation proceedings; and

"(b)   All memoranda, work products, documents and other materials, including any draft mediation agreement,

that are prepared for or submitted in the course of or in connection with a mediation or by a mediator, a mediation program or a party to, or any other person present at, mediation proceedings."

ORS 36.110(8) distinguishes between two types of mediation communications. Subsection (8)(a) applies to communications that are *made to* someone in the course of or in connection with mediation. In plain terms, that subsection covers *direct* communications between persons who are privy to a mediation proceeding. Subsection (8)(b), on the other hand, applies to *materials* prepared for, or submitted in connection with, mediation. Logically, such materials include the sort of supporting documents that litigants frequently exchange in order to convince the mediator, and each other, of the merits of their respective proposals. Obvious examples, in a dissolution case, would include a psychologist's custody evaluation or the financial statements of a family business. Materials that are the products of a mediation process also are included in subsection (8)(b), which lists, as an example, draft mediation agreements.

The threshold question is whether the April and May 1999 letters constituted mediation communications in either statutory sense. We conclude that both letters were mediation communications under subsection (8)(a). Husband's attorney's stated purpose in sending the April 1999 letter was "to lay out [husband's] operating assumptions and his analysis of the expected outcomes so that [wife would] have a clear perception of [his] analysis." Although the letter stated that it contained husband's final settlement offer, in the closing sentence, husband's attorney suggested a meeting among counsel and the mediator to discuss the offer. Husband's attorney sent a copy of the April letter to the mediator. The purpose of the May 1999 letter was to inform wife's attorney of a recent decision by this court that, in husband's attorney's opinion, supported husband's position on appeal. The May letter withdrew the offer communicated in the April letter and terminated the pursuit of mediation.

Both 1999 letters embodied the type of communication to which subsection (8)(a) applies. They were direct settlement communications *made to* one of the disputants' representatives. The letters had no independent significance

apart from the communications that they contained and, thus, were unlike the sorts of prepared or submitted collateral materials covered by ORS 36.110(8)(b). In addition, although each letter reflected a different phase of negotiations, each was sent in *connection with* the mediation.[5] Both letters followed the mediation conference closely in time, referred to mediation, and were sent before the director of the mediation program referred the case back to this court for decision. Therefore, we conclude that the April and May letters were mediation communications within the meaning of ORS 36.110(8)(a).

Wife concedes as much. However, she notes that ORS 36.222 does not exclude all mediation communications from evidence, but, rather, excludes only "mediation communications * * * *that are confidential* under ORS 36.220 to ORS 36.228." Wife asserts that, although ORS 36.220 makes mediation communications confidential in general, ORS 36.220(3) provides an exception for "[s]tatements, memoranda, work products, documents and other materials, otherwise subject to discovery, that were not prepared specifically for use in a mediation." She contends that, because the letters were not prepared specifically for use in the mediation, they fall within the exception in ORS 36.220(3). We disagree.

ORS 36.220(3), like ORS 36.110(8)(b), applies to *materials*, rather than to communications *made to* somebody, as does ORS 36.110(8)(a). ORS 36.220(3) is not worded identically to subsection (8)(b), in that the former specifically lists "statements" as a subcategory of materials, whereas the latter does not. In addition, subsection (8)(b) gives a particular example of its coverage, draft mediation agreements, whereas ORS 36.220(3) does not. Subsection (8)(b) also takes the trouble to list the sorts of people who may submit or prepare the covered materials; ORS 36.220(3) contains no such list. However, those minor differences in phrasing and emphasis do not diminish the fundamental relationship between the two provisions. The overarching category of communication to which both statutes apply is essentially identical; each applies only to *materials*.

---

[5] A "connection" is a relationship, an association, or a link. *Webster's Third New Int'l Dictionary*, 481 (unabridged ed 1993).

■    The purpose of ORS 36.220(3) is straightforward. It is intended to prevent *discoverable materials* from becoming confidential merely because they were submitted in connection with mediation. Thus, ORS 36.220(3) makes nonconfidential a subset of mediation communications described in subsection (8)(b), namely, discoverable materials submitted in the course of or in connection with mediation proceedings and that were not specifically prepared for use in mediation. Although not worded identically, subsection (8)(b) and ORS 36.220(3) thus operate in parallel and must be construed accordingly. *See Centennial School Dist. No. 28J v. BOLI*, 169 Or App 489, 501, 10 P3d 945 (2000) (holding that parallel construction of statutory provisions requires giving identical words or phrases in each statute the same meaning). In short, ORS 36.220(3) makes nonconfidential only discoverable *materials* that are mediation communications under subsection (8)(b). It does not apply to mediation communications covered by subsection (8)(a).[6]

■    Because the April and May letters were mediation communications as defined by subsection (8)(a), they are confidential under ORS 36.220(1)(a), regardless of whether or not they were specifically prepared for use in mediation. Our conclusion does not eviscerate ORS 20.075(1)(e) and (f) in the context of cases that are mediated. It simply precludes, as required by ORS 36.220(3), the use of *confidential* mediation communications as evidence to support a finding that a party has been objectively unreasonable during the proceedings or in pursuing settlement.

Husband's motion to strike granted as to April and May 1999 letters and denied with respect to December 1998 letter; husband's motions for extension of time to file reply and to file objection to wife's petition for attorney fees granted; husband's request for attorney fees denied.

---

[6] That construction is reinforced by the fact that ORS 36.220(3) applies only to materials that are "subject to discovery." Because the April and May letters were *direct* mediation communications, it makes no sense to consider their discoverability.