Phillip ALFIERI,
*Plaintiff-Appellant,*

*v.*

Glenn SOLOMON,
*Defendant-Respondent.*

Multnomah County Circuit Court
120302980; A152391

329 P3d 26

Mark M. McCulloch argued the cause for appellant. With him on the opening brief was Powers, McCulloch & Bennett, LLP. With him on the reply brief was Farleigh Wada Witt.

Thomas W. Brown argued the cause for respondent. With him on the brief was Cosgrave Vergeer Kester LLP.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

## EGAN, J.

In this legal malpractice action arising out of the mediation of an underlying civil lawsuit, plaintiff appeals from a general judgment dismissing his claims against his former attorney, asserting that the trial court erred in granting defendant's ORCP 21 E motion to strike and in granting defendant's motion to dismiss with prejudice under ORCP 21 A(8) for failure to state a claim. Plaintiff contends that the trial court erred in striking the allegations that, during and just after the mediation, defendant's representation of plaintiff was negligent and that defendant breached his fiduciary duty to plaintiff. Plaintiff also asserts that the trial court erred in dismissing his complaint with prejudice under ORCP 21 A(8). We affirm in part and reverse in part the motion to strike, and we reverse and remand the judgment of dismissal with prejudice.

In reviewing a trial court's grant of a motion to strike under ORCP 21 E and grant of a motion to dismiss for failure to state a claim under ORCP 21 A, we employ the same standard: "We *** accept as true all well-pleaded allegations and any facts that might be adduced as proof of those allegations." *Ross and Ross*, 240 Or App 435, 439, 246 P3d 1179 (2011). In light of that standard, we summarize the facts taken from plaintiff's complaint.

Plaintiff retained defendant, an employment law attorney, to pursue claims against plaintiff's former employer by filing complaints with the Bureau of Labor and Industries (BOLI), and, later, by filing a civil complaint on plaintiff's behalf. In that complaint, defendant initially alleged a common-law wrongful discharge claim against plaintiff's former employer, but subsequently filed a motion to amend the complaint to add additional claims. The trial court granted that motion. However, defendant did not amend the complaint. Defendant performed only limited discovery in the underlying lawsuit and then proposed mediation.

Before the mediation conference,[1] defendant advised plaintiff regarding the potential value of settling the underlying

---

[1] We distinguish between the "mediation conference"—referring to the face-to-face meeting between parties and the mediator to work toward a resolution of the dispute—and the "mediation process"—*viz.*, the series of ongoing contacts

lawsuit. No resolution was reached at the mediation conference. The day after the mediation conference, the mediator suggested a settlement package to the parties. Over the next 16 days, defendant continued to advise plaintiff regarding the proposed settlement package. During that time, defendant again advised plaintiff regarding the potential value of settling the underlying lawsuit, but significantly reduced the dollar value of his recommendation. Plaintiff ultimately signed a settlement agreement that incorporated the settlement amount proposed by the mediator. The parties agreed that the terms of the agreement and the settlement amount would remain confidential. After signing the agreement, plaintiff continued to seek advice from defendant regarding the enforceability of the agreement; during that period, defendant failed to advise plaintiff that the former employer had not complied with some of the agreement's terms,[2] calling into question the enforceability of the agreement.

Plaintiff sued defendant for legal malpractice, alleging that defendant had been negligent and had breached his fiduciary duty to plaintiff. The allegations included communications by the mediator, the content of communications between plaintiff and defendant during the 16-day period after the mediation conference (the post-mediation conference period), the settlement amount and contents of the final settlement agreement, and the content of communications between plaintiff and defendant after plaintiff had signed the settlement agreement (the post-signing period).

Pursuant to ORCP 21 E, defendant moved to strike the portions of plaintiff's complaint relating to the mediation

---

between the parties to mediation and the mediator, although those contacts may occur outside of the mediation conference setting. *See* ORS 36.110(5) (defining mediation as a "process" that "includes all contacts * * * until such time as a resolution is agreed to by the parties or the mediation process is terminated").

[2] Plaintiff alleged that his former employer failed to pay the settlement amount within 10 days of plaintiff's acceptance as required by the terms of the agreement. The record reveals that plaintiff ultimately received the settlement amount from the employer. However, plaintiff continued to allege that the agreement was unenforceable because the employer "had not accepted it on time." The trial court struck the bulk of those allegations from the complaint, leaving only that the former employer failed to comply with the terms of the agreement, and that defendant was negligent because he advised plaintiff that he was bound to the terms of the agreement.

and settlement agreement, contending that those challenged portions of the complaint were "mediation communications" that were both confidential and inadmissible under ORS 36.222(1). Defendant also filed an ORCP 21 A(8) motion to dismiss plaintiff's complaint for failure to state ultimate facts sufficient to constitute a claim, arguing that dismissal was required because plaintiff could not allege or prove his damages without the challenged portions of the complaint. After a hearing on the matter, the trial court granted defendant's motion to strike. The court then dismissed the complaint with prejudice. This appeal followed.

Because they inform the parties' arguments, we begin by setting forth the pertinent legal standards. Generally, "[m]ediation communications are confidential and may not be disclosed to any other person" unless the parties otherwise agree, in writing. ORS 36.220(1)(a), (b). "Mediation communications" are defined in ORS 36.110(7) as follows:

"(a)   All communications that are made, in the course of or in connection with a mediation, to a mediator, a mediation program or a party to, or any other person present at, the mediation proceedings; and

"(b)   All memoranda, work products, documents and other materials, including any draft mediation agreement, that are prepared for or submitted in the course of or in connection with a mediation or by a mediator, a mediation program or a party to, or any other person present at, mediation proceedings."

That definition distinguishes between direct communications and materials. "[D]irect communications" are "communications between persons who are privy to a mediation proceeding." *Bidwell and Bidwell*, 173 Or App 288, 294, 21 P3d 161 (2001) (emphasis omitted). Direct communications, which fall under ORS 36.110(7)(a), are confidential under ORS 36.220(1)(a), regardless of whether they were specifically prepared for use in mediation. *Id.* On the other hand, "materials" that are also mediation communications must be "prepared for, or submitted in connection with, mediation," and typically include "the sort of supporting documents that litigants frequently exchange in order to convince the mediator, and each other, of the merits of their respective proposals." *Id.* at 294 (emphasis omitted).

The definition of "mediation communications" in ORS 36.110(7) also requires us to determine if a communication under either subparagraph (a) or (b) occurred "in the course of or in connection with a mediation." "Mediation" is defined as

"a *process* in which a mediator assists and facilitates two or more parties to a controversy in reaching a mutually acceptable resolution of the controversy and includes *all contacts* between a mediator and any party or agent of a party, *until such time as a resolution is agreed to by the parties or the mediation process is terminated.*"

ORS 36.100(5) (emphasis added). Under that definition of mediation, a communication made outside the mediation conference setting may still be a confidential "mediation communication" as long as the communication occurs in the course of or in connection with the ongoing mediation process.

Thus, to determine if a communication is a "mediation communication," we first must determine whether the communication is either a direct communication made to a party privy to the mediation proceedings, ORS 36.110(7)(a), or material prepared for use in the mediation proceedings, ORS 36.110(7)(b). After determining whether one of those subsections is applicable, we next must determine if the communication at issue occurred "in the course of or in connection with" the mediation *process.*[3]

As noted, generally, "[m]ediation communications are confidential and may not be disclosed to any other person" unless the parties otherwise agree, in writing. ORS 36.220(1)(a), (b). Conversely, unless the parties otherwise agree in writing, "[t]he terms of any mediation agreement are *not* confidential." ORS 36.220(2)(a), (b) (emphasis added). Generally, confidential mediation communications and confidential mediation agreements "are not admissible as evidence in any subsequent adjudicatory proceeding,

---

[3] Our "paramount goal" when construing a statute is to discern the legislature's intent. To do so, we look to the text, context, including related statutes, and pertinent legislative history of the statute. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009). When we consider the text of a statute we give words of common usage their plain and ordinary meaning. *Id.*

and may not be disclosed by the parties or the mediator in any subsequent adjudicatory proceeding." ORS 36.222(1). However, the statute carves out specific exceptions, allowing disclosure in the following situations: if all parties agree in writing to disclosure of the mediation communications; if the proceeding is to enforce, modify, or set aside the mediation agreement; if the action is between a party and the mediator or mediation program; or in circumstances involving child or elder abuse. ORS 36.222(2), (4) - (6).

With that background in mind, we turn to the allegations that the trial court struck from plaintiff's complaint to determine whether they were confidential mediation communications or a confidential mediation agreement that plaintiff could not disclose. On appeal, plaintiff generally contends that the trial court erred in striking three categories of communications, because they are nonconfidential: (1) all communications between plaintiff and defendant relating to the substance of the settlement agreement; (2) communications occurring during the post-mediation conference period; and (3) communications between plaintiff and defendant during the post-signing period. We examine each in turn, beginning with the settlement agreement itself.

As noted, plaintiff agreed to keep the terms of the settlement agreement and settlement amount confidential. ORS 36.220(2)(b). As such, the terms of the agreement and the settlement amount are inadmissible as evidence and not subject to disclosure in any subsequent adjudicatory proceeding. ORS 36.222(1). That also covers the communications between plaintiff and defendant relating to the substance of the settlement agreement.

Plaintiff asserts, in part, that the settlement agreement was unenforceable, and, based on that fact, it does not matter that the parties had agreed to keep the agreement's terms and the settlement amount confidential. We disagree. Plaintiff brought this action against defendant for negligence and breach of fiduciary duty; he did not bring an action to enforce, modify, or set aside the agreement, ORS 36.222(4). Nor does plaintiff argue that he is allowed to disclose the terms of the agreement and settlement amount

under any other valid exception to the confidentiality rules. Accordingly, we reject plaintiff's argument and conclude that the trial court did not err in striking the allegations that disclosed the terms of the settlement agreement, including the settlement amount.

Turning to the communications that occurred during the post-mediation conference period, we must determine whether those communications were "mediation communications." Plaintiff focuses on plaintiff's and defendant's direct post-mediation conference communications, including the content of defendant's legal advice to plaintiff and the mediator's communications (in which the mediator proffered a settlement proposal). Accordingly, we analyze whether those communications fall within the definition of ORS 36.110(7)(a). That requires us to determine, first, if the communications were made to a person covered by the statute, and, second, whether those communications occurred "in the course of or in connection with" the mediation. ORS 36.110(7)(a).

The communications between the mediator and the parties were communications made either to "a party" or "a mediator," respectively, and thus, are all communications that meet the first step of our inquiry. ORS 36.110(7)(a). The remaining issue to be addressed is whether the communications made between defendant and plaintiff fall within the definition of ORS 36.110(7)(a).

Plaintiff was, by definition, "a party * * * to the mediation proceedings." ORS 36.110(7)(a); ORS 36.234 ("[A] person * * * is a party to a mediation if the person * * * participates in a mediation and has a direct interest in the controversy that is the subject of the mediation."). The parties, however, each advance several arguments relating to defendant's status—*i.e.*, that he is (or is not) "a party," "any other person present," or that defendant was "a party" because he acted as plaintiff's agent during the mediation process. Because ORS 36.110(7)(a) specifies only *to whom the communication is made*, and omits any reference to the person making the communication, *defendant's* status as "a party" or "any other person present" has no import as to whether his communications—*i.e.*, the alleged negligent legal advice—fell within the scope of ORS 36.110(7)(a). Those communications are

undisputedly communications made to "a party." To the extent plaintiff's allegations implicate plaintiff's communications back to defendant, that question has been answered by *Bidwell*. In that case, letters exchanged between the parties' attorneys were mediation communications because they were *"made to* one of the disputants' representatives." *Bidwell*, 173 Or App at 294 (emphasis in original). Defendant was plaintiff's representative for purposes of mediation, and he also was privy to the mediation proceedings. If defendant's communications to plaintiff are "mediation communications," then plaintiff's communications to defendant within the same general exchange also must be "mediation communications." Any other conclusion would lead to the absurd result of plaintiff being permitted to disclose one side of an otherwise confidential communication exchange.

Next, we must determine whether the communications between the mediator and the parties and plaintiff and defendant during the post-mediation conference period occurred "in the course of or in connection with" the mediation. As set out previously, mediation is defined as "a process" that continues "until such time as a resolution is agreed to by the parties or the mediation process is terminated." ORS 36.100(5). However, the phrase "in the course of or in connection with" the mediation is not otherwise defined in ORS chapter 36. Thus we employ the ordinary meaning of those terms. The ordinary meaning of "course" is "progress or progression through a series (as of acts or events) or through a development or a period," *Webster's Third New Int'l Dictionary* 522 (unabridged ed 2002), and in *Bidwell*, we noted that a "connection" is a "relationship, an association, or a link," 173 Or App at 295 n 5.

In keeping with those ordinary meanings, in *Bidwell*, we concluded that letters sent between the parties' attorneys while the litigation was held in abeyance pending mediation fell within the definition of mediation communications in ORS 36.110(7)(a). We reached that conclusion, as pertinent here, because the letters were sent while mediation was pending, occurred close in time *"after a mediation conference had taken place,"* each letter "reflected a different phase of negotiations," and the letters had been sent before one party withdrew the settlement and the case was referred

out of mediation and back to the Court of Appeals. *Bidwell*, 173 Or App at 291, 294-95 (emphasis added).

In sum, communications are made "in the course of or in connection with" mediation if they are related to, associated with, or linked to the mediation process. In other words, "mediation communications" include the series of actions or occurrences relating to the mediation that continues until the parties agree to a resolution or the mediation ends, because, for example, one party has withdrawn from the mediation or because the mediation has been formally terminated. *Id.* at 293, 295; ORS 36.110(5).

Here, it is undisputed that defendant continued to advise plaintiff relating to the mediation process—and its potential outcomes—during the 16-day post-mediation conference period. The parties participated in a mediation conference but did not reach a mutually agreed-upon resolution. Defendant advised plaintiff during that conference. The day after the mediation conference, the mediator proffered a settlement proposal. Defendant continued to advise plaintiff over the next two weeks, during which time he advised plaintiff that plaintiff could expect to receive a lower settlement value than his initial estimate. Plaintiff then signed a settlement agreement resolving his claims with his former employer.

Thus, during the post-mediation conference period, plaintiff took a series of actions that occurred closely in time after the mediation conference that specifically dealt with whether plaintiff should accept the mediator's proposed settlement. That *process* culminated in plaintiff's assent to a resolution of the outstanding legal issues and incorporated at least some of the terms of the mediator's settlement proposal. Plaintiff's execution of the agreement, and, in turn, the parties' assent to a resolution of the issues, brought an end to the mediation process.

Accordingly, the communications between plaintiff and defendant during the post-mediation conference period and the mediator's communications with the parties occurred "in the course of or in connection with" the mediation process, and, as such, were confidential. ORS 36.222(1)(a).

Therefore, the trial court did not err in striking the portions of plaintiff's complaint that related to the communications between plaintiff and defendant, and between the mediator and the parties, during the post-mediation conference period.

Plaintiff next contends that, because the mediation process ended when he signed the settlement agreement, his communications with defendant during the post-signing period were nonconfidential and subject to disclosure. We agree.

The trial court struck plaintiff's allegations that defendant had failed to properly advise him that his former employer had not complied with the settlement agreement's terms.[4] Like the communications between plaintiff and defendant during the post-mediation conference period, the communications between plaintiff and defendant during the post-signing period are communications made to a person privy to the mediation proceedings under ORS 36.110(7)(a).

However, those communications did not occur in the course of or in connection with the mediation process and thus are not confidential mediation communications. As noted above, the mediation process ended when plaintiff and his employer signed the settlement agreement and resolved the disputes at issue in the mediation. Although the communications between defendant and plaintiff during the post-signing period have some connection to the mediation because they concerned the settlement agreement, those communications occurred outside the mediation process and thus are not subject to the blanket nondisclosure rule in ORS 36.220(1). *See* ORS 36.110(5) (the mediation process continues only "until such time as a resolution is agreed to by the parties"). To the extent the communications revealed the terms of the settlement agreement itself, those terms cannot be disclosed, as discussed elsewhere in this opinion. *See* 263 Or App at 498. Other communications that occurred during the post-signing period, however, could be disclosed by plaintiff because they are not "mediation communications"

---

[4] In essence, plaintiff alleged that defendant's failure to communicate about his former employer's performance (or nonperformance) under the mediation agreement was negligent.

as defined by ORS 36.110(7)(a). Thus, the trial court erred in striking those portions of plaintiff's complaint.

Finally, we turn to whether dismissal of the complaint with prejudice under ORCP 21 A(8) was error. To state a claim for legal malpractice, plaintiff must allege "(1) a duty that runs from the defendant to the plaintiff; (2) a breach of that duty; (3) a resulting harm to the plaintiff measurable in damages; and (4) causation, *i.e.*, a causal link between the breach of duty and the harm." *Stevens v. Bispham*, 316 Or 221, 227, 851 P2d 556 (1993) (emphasis omitted).

> "To establish causation, the plaintiff must show that, but for the defendant's negligence, the plaintiff would not have suffered the claimed harm * * * by showing that he or she would have obtained a more favorable result had the defendant not been negligent. The jury in the malpractice case is called upon * * * to decide what the outcome for plaintiff would have been in the earlier case if it had been properly tried, a process that has been described as a 'suit within a suit.' If the jury determines that the defendant was negligent but concludes that the outcome of the underlying case would have been the same in all events, the defendant's negligence is deemed not to have caused the plaintiff's harm."

*Woods v. Hill*, 248 Or App 514, 524-25, 273 P3d 354 (2012) (citations omitted).

Defendant argues that plaintiff was barred from disclosing the settlement amount, and thus he could not allege "a resulting harm * * * measurable in damages." *Stevens*, 316 Or at 227.

With those principles in mind, we reiterate the procedural posture in this case. Plaintiff filed the complaint for legal malpractice. Defendant then filed a *motion to strike* and motion to dismiss. ORCP 21 A(8), E. After the hearing on the motion, the trial court dismissed plaintiff's complaint *with prejudice*. This appeal followed. Under ORCP 23 A,[5]

---

[5] ORCP 23 A provides, in relevant part, "A pleading may be amended by a party once as a matter of course at any time before a responsive pleading is served * * *."

"plaintiff had to be allowed an opportunity to amend [the] complaint once, as a matter of right, before the trial court dismissed [the] complaint with prejudice." *O'Neil v. Martin*, 258 Or App 819, 838, 312 P3d 538 (2013), *rev den*, 355 Or 381 (2014). Thus, the trial court erred when it dismissed plaintiff's complaint with prejudice. *See O'Neil*, 258 Or App at 837 (concluding that, because the DOC defendants had not filed a responsive pleading—and had instead filed ORCP 21 A motions to dismiss—"the trial court lacked discretion to dismiss the complaint with prejudice"); *Lamka v. KeyBank*, 250 Or App 486, 491, 281 P3d 639 (2012) (concluding that, under the plain language of ORCP 23 A, the plaintiff could amend the complaint once as a matter of law even if the court had previously dismissed the complaint, because the defendant had not yet filed a responsive pleading).

As noted, we accept as true all well-pleaded allegations in plaintiff's complaint. The trial court struck portions of plaintiff's complaint with respect to the damages allegation, but left portions of the complaint intact. Upon review of the complaint, we discern that plaintiff alleged the amount that he had expected to receive after the jury trial in the underlying suit ($4,000,000), *i.e.*, the resulting harm to plaintiff measurable in damages.

We understand the concern of the trial court in the context of plaintiff's malpractice action, which requires plaintiff to prove that he would have obtained a more favorable result if defendant had not been negligent. Here, however, the negligence allegations that are not confidential (and not stricken) are that defendant gave negligent advice to plaintiff post-signing, that is, after plaintiff had already obtained the settlement amount. Thus, conceivably the posture presented for plaintiff to show that he would have achieved a more favorable result had the defendant not been negligent is whether plaintiff would have been able to recover additional funds. That posture does not necessarily require plaintiff to plead and prove the settlement amount to the jury because the jury would not need to compare a potential jury award to the settlement amount to determine which was more favorable; rather the jury would compare zero (nothing in addition to the settlement amount) with the

additional amount plaintiff proves he could have achieved if the settlement agreement had been challenged.

Should a jury ultimately find for plaintiff, the parties and the trial court can determine the best method to reduce any award in plaintiff's favor by the settlement amount that does not reveal that amount to the jury, if such a reduction is necessary to avoid a double recovery. *See, e.g.,* OEC 201 (judicial notice). Whatever means are ultimately used to address that potential discrete issue, it was error for the trial court to dismiss plaintiff's complaint with prejudice, when, at this early stage, it was conceivable that plaintiff could allege and prove a total damage award without disclosing the settlement amount in an amended complaint.

Motion to strike affirmed in part and reversed in part; judgment of dismissal with prejudice reversed.