No. 53 December 10, 2015 383

IN THE SUPREME COURT OF THE
STATE OF OREGON

Phillip ALFIERI,
*Petitioner on Review,*

*v.*

Glenn SOLOMON,
*Respondent on Review.*

(CC 1203-02980; CA A152391; SC S062520)

En Banc

On review from the Court of Appeals.*

Argued and submitted on May 12, 2015.

Mark McCulloch, Farleigh Wada Witt, Portland, argued the cause and filed the brief for the petitioner.

Thomas W. Brown, Cosgrave Vergeer Kester, Portland, argued the cause and filed the brief for the respondent.

Rankin Johnson, IV, Law Office of Rankin Johnson IV, LLC, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

BALMER, C. J.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

_____
* Appeal from Multnomah County Circuit Court, Jerry B. Hodson, Judge. 263 Or App 492, 329 P3d 26 (2014).

**BALMER, C. J.**

The issue presented in this case is one of first impression: to what extent do the confidentiality provisions of Oregon's mediation statutes, ORS 36.100 to 36.238, prevent a client from offering evidence of communications made by his attorney and others in a subsequent malpractice action against that attorney? The trial court granted defendant's ORCP 21 E motion to strike certain allegations in plaintiff's complaint and then dismissed the complaint with prejudice under ORCP 21 A(8) for failure to state a claim. The Court of Appeals affirmed in part and reversed in part, holding that ORS 36.220 and 36.222 barred some, but not all, of plaintiff's allegations, and that the trial court erred in dismissing the complaint with prejudice before a responsive pleading had been filed. *Alfieri v. Solomon*, 263 Or App 492, 329 P3d 26 (2014). We agree that ORS 36.220 and 36.222 limit the subsequent disclosure of mediation settlement terms and certain communications that occur in the course of or in connection with mediation. We disagree, however, as to the scope of communications that are confidential under those statutes. We also disagree with the Court of Appeals as to whether the trial court erred in dismissing plaintiff's complaint with prejudice because no responsive pleading had been filed. For the reasons set out below, we affirm in part and reverse in part the decision of the Court of Appeals and remand to the circuit court for further proceedings.

## I.  BACKGROUND

We state the facts, accepting as true all well-pleaded allegations in the complaint and drawing all reasonable inferences in plaintiff's favor. *Bailey v. Lewis Farm, Inc.*, 343 Or 276, 278, 171 P3d 336, 337 (2007). Plaintiff retained defendant, an attorney specializing in employment law, to pursue discrimination and retaliation claims against plaintiff's former employer. In the course of that representation, defendant filed administrative complaints with the Oregon Bureau of Labor and Industries and thereafter a civil action against the former employer for damages on plaintiff's behalf. After limited discovery, plaintiff, represented by defendant, and plaintiff's former employer entered into mediation under the terms and conditions set forth in

ORS 36.185 to 36.210. Before meeting with the mediator and plaintiff's former employer, defendant advised plaintiff about the potential value of his claims and the amount for which he might settle the lawsuit. Plaintiff and his former employer, along with their respective lawyers and the mediator, attended a joint mediation session and attempted to resolve the dispute. However, no resolution was reached. After the session ended, the mediator proposed a settlement package to the parties. In the weeks that followed, defendant provided advice to plaintiff about the proposed settlement. At defendant's urging, plaintiff accepted the proposed terms and signed a settlement agreement with his former employer. One of the terms to which plaintiff agreed was that the settlement agreement would be confidential. After the parties signed the agreement, defendant continued to counsel plaintiff and provide legal advice regarding the settlement.

Some months after the mediation ended, plaintiff concluded that defendant's legal representation had been deficient and negatively affected the outcome of his case. Plaintiff sued defendant for legal malpractice, alleging that defendant had been negligent and had breached his fiduciary duty to plaintiff through his work both on the underlying civil action and the mediation. Plaintiff asserted that had defendant properly and completely pleaded his claims and reasonably prepared for trial he would have received a favorable jury verdict and been awarded substantially more monetary relief than he obtained by settlement. To assert those claims, plaintiff pleaded facts that disclosed certain terms of the confidential settlement agreement and that pertained to communications made by various persons involved in the mediation process.

Specifically, plaintiff's allegations disclosed facts about the mediator's settlement proposal to the parties, defendant's conduct during the mediation, and private attorney-client discussions between plaintiff and defendant regarding the mediation. Those private attorney-client discussions—which occurred outside the mediation session and without the involvement of either the mediator or plaintiff's former employer—concerned the valuation and strength of plaintiff's claims, whether plaintiff was obligated to accept

the mediator's proposal and sign the settlement agreement, and whether the agreement was enforceable. Although some of those discussions took place before or while the mediation was still in progress, others occurred when plaintiff signed the settlement agreement or thereafter.

Defendant responded by moving to strike many of the allegations in plaintiff's complaint, arguing that they contained material that was confidential and inadmissible under two provisions of Oregon's mediation statute, ORS 36.220 and ORS 36.222. ORS 36.220 provides in part: "Mediation communications are confidential and may not be disclosed to any other person" and "parties to a mediation may agree that all or part of the terms of a mediation agreement are confidential." ORS 36.220(1)(a), (2)(b).[1] To the extent that a mediation agreement or communication is confidential under ORS 36.220, it is "not admissible as evidence in any subsequent adjudicatory proceeding, and may not be disclosed by the parties or the mediator in any subsequent adjudicatory proceeding." ORS 36.222(1).

The mediation statute contains definitional provisions that describe the scope of what falls within those confidentiality and admissibility restrictions. "Mediation" is defined as:

"[A] process in which a mediator assists and facilitates two or more parties to a controversy in reaching a mutually acceptable resolution of the controversy and includes all contacts between a mediator and any party or agent of a party, until such time as a resolution is agreed to by the parties or the mediation process is terminated."

ORS 36.110(5). A "'Mediation agreement' means an agreement arising out of a mediation, including any term or condition of the agreement." ORS 36.110(6). "'Mediation communications' means: (a) All communications that are made, in the course of or in connection with a mediation, to a mediator, a mediation program or a party to, or any

---

[1] Unlike mediation communications, which are confidential under the statute, the terms of a mediation agreement are not confidential unless the parties expressly agree to make them so. *See* ORS 36.220(2)(a) (terms of mediation agreements not confidential); ORS 36.220(2)(b) (parties may agree to make all or part of mediation agreement confidential).

other person present at, the mediation proceedings." ORS
36.110(7)(a).[2]

The trial court granted defendant's motion to strike,
in part, and struck substantial portions of plaintiff's com-
plaint. In addition to striking allegations that disclosed the
settlement amount and other confidential settlement terms,
the trial court struck several allegations because they dis-
closed confidential mediation communications. Those alle-
gations included that:

- The mediation was "largely unsuccessful because
  defendant substantially lowered his recommenda-
  tion for settlement from amounts he told plaintiff
  before the mediation the lawsuit would likely settle
  for."

- Following the mediation session, the mediator sug-
  gested a particular settlement amount to the par-
  ties, and that "[o]ver the course of the next several
  days, plaintiff made several attempts to reject the
  proposed offer but defendant pressured plaintiff
  into eventually agreeing to the mediator's proposal."

- Defendant failed "to reasonably advocate for plain-
  tiff in the mediation of the lawsuit" with plaintiff's
  former employer.

- Defendant recommended that plaintiff settle for the
  mediator's proposed amount.

- Defendant failed to advise plaintiff that the media-
  tor's proposal "was not enforceable" because plain-
  tiff's former employer "had not accepted it on time."

- Defendant had advised plaintiff "that he was bound
  to the terms of the Agreement even though [plain-
  tiff's former employer] failed to pay within the time
  required by the terms of the Agreement."

Defendant also filed a motion to dismiss plaintiff's
complaint under ORCP 21 A(8) for failure to state ultimate

_____

[2] The second paragraph of the statute, ORS 36.110(7)(b) adds to the defini-
tion of "mediation communications" certain written materials, including "memo-
randa, work products, documents and other materials" created in the course of or
in connection with mediation. That paragraph is not at issue in this case.

facts sufficient to state a claim for relief, on the basis that, in the absence of the allegations that defendant argued should be stricken, plaintiff had not alleged facts sufficient to establish his damages or that defendant caused those damages. After granting defendant's motion to strike, the trial court also granted the motion to dismiss and dismissed the complaint with prejudice.

Plaintiff appealed, and the Court of Appeals, as noted, affirmed in part and reversed in part. The Court of Appeals concluded that the trial court did not err in striking those allegations that disclosed the terms of the settlement agreement and the allegation that described the mediator's settlement proposal to the parties. With respect to the other allegations that referred to mediation-related communications, the Court of Appeals distinguished between those communications that took place while the mediation process was still underway and those that occurred after the settlement agreement was signed.

Looking to the text of the mediation statute and interpreting the definitional terms in ORS 36.110, the court agreed that discussions between plaintiff and defendant that occurred in preparation for, during, and after the mediation conference—but before the signing of the settlement agreement—were "mediation communications" made "in the course of or in connection with" the mediation "process." The court concluded that this was true even for attorney-client communications exchanged privately outside of mediation proceedings and without the participation of either the mediator or plaintiff's former employer. The court concluded that communications that occurred post-signing, however, were not "mediation communications" because the mediation had already ended and that the trial court had erred in striking the allegations referring to those.

Finally, the Court of Appeals concluded that it was error for the trial court to dismiss the complaint with prejudice because, under ORCP 23 A, a plaintiff is entitled to amend a complaint once as a matter of right before a responsive pleading is filed and it was conceivable that plaintiff could still allege and prove his claims. We granted plaintiff's petition for review.

On review, plaintiff argues that the Court of Appeals erred in its reading of ORS 36.220 and 36.222. Plaintiff acknowledges that he agreed with his former employer to make the settlement agreement confidential. Instead, plaintiff focuses on the applicability of those statutory provisions to subsequent attorney malpractice actions and to private attorney-client discussions that occur outside of mediation proceedings. Plaintiff argues that the allegations struck from his complaint did not contain "mediation communications" within the meaning of ORS 36.110(7)(a) because the communications described were not part of the "mediation," in that they did not involve assistance or facilitation by a mediator. Plaintiff further argues that mediation confidentiality is a privilege that belongs to the mediating parties and that the legislature did not intend for attorneys who represent mediating parties to invoke the benefit of that protection. Finally, plaintiff argues that allowing attorneys to use mediation confidentiality as a shield against malpractice claims is inconsistent with the express purpose of mediation confidentiality and contrary to public policy. Allowing such a rule, plaintiff contends, would lead to the unreasonable result of protecting lawyers who engage in unethical—and even criminal—conduct in the course of mediation from investigation and prosecution.

Defendant responds that, properly construed, "mediation communications" include all communications that are made to a party or its agent that support, aid, or facilitate the resolution of a dispute with the aid of a mediator until that effort finally and definitively ends. Defendant asserts that this includes all communications between a mediating party and that party's attorney in the mediation. Defendant further asserts that, as a lawyer representing a party to a mediation, he qualified as "any other person present at, the mediation proceedings," so that statements that plaintiff made to him concerning the mediation fall within the plain and ordinary meaning of ORS 36.110(7)(a). In addition, defendant notes that the legislature considered and provided for several exceptions to mediation confidentiality, but that none relate to a subsequent action by a party against that party's own lawyer for alleged malpractice in connection with the mediation. Defendant argues that the legislature's

failure to include such an exception in the mediation statute evinces a deliberate policy choice. Finally, defendant asks this court to reverse the Court of Appeals decision holding that the trial court erred in dismissing plaintiff's complaint with prejudice.

## II. ANALYSIS

### A. *Defendant's Motion to Strike*

The parties do not dispute the legal standards that apply to the trial court's disposition of plaintiff's motion to strike. A court may strike "any insufficient defense or any sham, frivolous, irrelevant, or redundant matter inserted in a pleading." ORCP 21 E(2). We generally review orders to strike for abuse of discretion. *See, e.g.*, *Lane County Escrow v. Smith, Coe*, 277 Or 273, 286, 560 P2d 608 (1977); *Cutsforth v. Kinzua Corp.*, 267 Or 423, 428, 517 P2d 640 (1973).[3] However, where a court's exercise of discretion turns on a legal question, such as the meaning of a statute, we review that determination as a matter of law. *See, e.g.*, *State v. Sarich*, 352 Or 601, 615, 291 P3d 647, 655 (2012) (when reviewing order of trial court for abuse of discretion, reviewing court must first determine whether, as a matter of law, trial court applied correct legal standard). Because the trial court's ruling on defendant's motion to strike, and its subsequent dismissal of the complaint, both turn on the interpretation of Oregon's mediation statute, ORS 36.100 to 36.238, we review those actions for legal error to determine whether the court applied the law correctly. *See, e.g.*, *Pereira v. Thompson*, 230 Or App 640, 659, 217 P3d 236 (2009) (applying legal error standard to review of motion to strike where trial court's grant of motion turned on predicate legal question of whether allegations were actionable under claim for legal malpractice).

---

[3] Although the Oregon Rules of Civil Procedure were first promulgated in 1978, the grounds for a motion to strike under ORCP 21 E were taken from the prior statutory scheme. *See* Council on Court Procedures, Rule 21 (comment), in *Legislative History Relating to Promulgation of Oregon Rules of Civil Procedure*, *Vol. 5*, 48, 51-52 (1979) (describing history of rule). *See also former* ORS 16.100 (1977), *repealed by* Or Laws 1979, ch 284, § 199 (setting out rule for when sham, frivolous, irrelevant or redundant material may be struck from pleadings). As such, our cases prior to 1978 on the standard of review for the grant of a motion to strike remain pertinent.

The parties do not dispute that unless an exception to the statutory prohibition on disclosure applies, mediation communications that are confidential under ORS 36.220 and inadmissible under ORS 36.222 cannot form the basis of a legal claim and thus may be struck from a complaint pursuant to ORCP 21 E. Whether the trial court erred in ruling on the motion to strike, therefore, turns on whether the court correctly interpreted the term "mediation communications" as it applies in ORS 36.220 and ORS 36.222. We approach that question with the goal of determining the legislature's intent. *State v. Gaines,* 346 Or 160, 171, 206 P3d 1042 (2009). We look primarily to the statute's text, context, and legislative history, although we may look also to general rules of statutory construction as helpful. *Id.* at 171-72.

Because "there is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes," we begin with the text of the statute. *Id.* at 171 (citations and internal quotation marks omitted). ORS 36.220 provides that "[m]ediation communications are confidential and may not be disclosed to any other person." ORS 36.220(1)(a). If a communication is confidential under ORS 36.220, it is inadmissible in "any subsequent adjudicatory proceeding." ORS 36.222(1). To determine whether the allegations that were struck from plaintiff's complaint fall within those provisions, we look to the definitions of the operative terms "mediation" and "mediation communications." Each is statutorily defined in ORS 36.110, and we examine each in turn below.

1.  *The Definition of "Mediation"*

As previously noted, the term "mediation" refers to a particular scope of activity as defined by the mediation statute, which provides:

> "'Mediation' means a process in which a mediator assists and facilitates two or more parties to a controversy in reaching a mutually acceptable resolution of the controversy and includes all contacts between a mediator and any party or agent of a party, until such time as the resolution is agreed to by the parties or the mediation process is terminated."

ORS 36.110(5). The parties do not dispute that plaintiff and his former employer were engaged in "mediation" within the meaning of the statute, and that the settlement agreement that they signed resulted from that process. Plaintiff and defendant differ, however, in their view of what activity is properly considered part of that mediation. Plaintiff argues that "mediation" encompasses only the activity that occurs in the presence of the mediator. Defendant focuses on the statutory reference to a "process" and argues that "mediation" includes all activity that facilitates the resolution of the dispute, until the point at which a settlement agreement is signed or the mediation process is otherwise definitively ended. As discussed below, the text supports a narrower interpretation of "mediation" and, in turn, "mediation communications," than defendant's contention that all communications that are related to the "mediation process" are confidential, regardless of when and where they occur.

Looking to the text and context of ORS 36.110(5), we conclude that plaintiff has the better argument. It is a familiar rule that in construing statutes we should not simply consult dictionaries and interpret words in a vacuum. *State v. Cloutier*, 351 Or 68, 96, 261 P3d 1234 (2011). "Dictionaries, after all, do not tell us what words mean, only what words *can* mean, depending on their context and the particular manner in which they are used." *Id.* (emphasis in original). The term "process" is broad in connotation, indicating "the action of passing through continuing development from a beginning to a contemplated end" or "a particular method or system of doing something." *Webster's Third New Int'l Dictionary* 1808 (unabridged ed 2002). However, ORS 36.110(5) narrows that term by describing more specifically that "'[m]ediation' means a process *in which* a mediator assists and facilitates" the resolution of the parties' dispute. (Emphasis added.) The words "in which a mediator assists and facilitates" follow the noun "process" without being set off by commas. Those words therefore operate as a restrictive clause, limiting the frame of reference and therefore the meaning of the preceding noun. *See* Bryan Garner, *Garner's Dictionary of Legal Usage* 888-89 (3rd ed 2011) (describing rule on use of commas to indicate restrictive versus nonrestrictive clauses); *cf. Blacknall v. Board*

*of Parole*, 348 Or 131, 140, 229 P3d 595 (2010) (reiterating and applying grammatical principle that a phrase set off by commas functions as parenthetical). Thus, in context, the meaning of "process" here appears more limited and refers only to those aspects of the mediation in which the mediator is directly involved.

That understanding of the text is supported by the subsequent clause in the same sentence that mediation "includes all contacts between a mediator and any party or agent of a party." ORS 36.110(5). Exemplars of that kind are not necessarily exclusive. *See State v. Kurtz*, 350 Or 65, 74-75, 249 P3d 1271 (2011) (concluding that use of term such as 'includes' or 'including' typically signals that legislature did not intend list of particulars that follows to be exhaustive). Nonetheless, "[w]hen, as here, the legislature uses a general term in a statute and also provides specific examples, those specific examples provide useful context for interpreting the general term." *Schmidt v. Mt. Angel Abbey*, 347 Or 389, 403-04, 223 P3d 399 (2009) (applying principle to criminal statute).

Here, the legislature's decision to specify that "mediation" includes *all* contacts between the mediator and the parties (or their agents) is particularly instructive. First, it implies that other types of interactions not mentioned, such as private conversations between a party and his or her attorney, may not necessarily be part of the mediation itself. Second, it confirms that the legislature understood "mediation" to refer, at its most essential level, to the assistance and facilitation that the mediator provides. The legislature's inclusion of that exemplar thus lends further support to the conclusion that the meaning of the term "mediation," as statutorily defined, refers to the part of the mediation process in which the mediator is directly involved.

That understanding of the definition of "mediation" is consistent with the wide range of mediation types that the statute covers. *See* ORS 36.155 to 36.175 (community-based mediation programs in individual counties), ORS 36.179 (program for mediations in which public bodies are parties), ORS 36.185 to ORS 36.200 (mediation of civil disputes in collaboration with circuit courts). Parties sometimes meet

with a mediator at a specified time and location to resolve their dispute according to a well-defined framework, but not always. *See* Office of the State Court Administrator, *Appropriate Dispute Resolution Deskbook* §§ 2 to 5 (2nd rev 1997) (describing Oregon mediation programs existing at that time by county and type, complete with applicable rules and sample forms); 1 *Arbitration and Mediation* §§ 15.17-24 (Oregon CLE 1996 & Supp 2008) (describing how mediation works and various styles used in Oregon). Mediation can take place in person or by phone, and in some cases, the mediator acts as an intermediary, communicating with each party separately rather than meeting with all participants at once. *See* Exhibit G, Senate Committee on Business, Law and Government, SB 160, Feb 27, 1997 (accompanying statement of DeEtte Wald Beghtol, mediator and participant in workgroup that drafted SB 160, describing modes of mediation frequently used by programs to be covered by the law). Some mediations involve only a mediator and two parties that have a dispute, while others have a variety of participants. Community-based mediations in particular may include a range of interested persons or entities. *See id.* (describing broad participation in many community mediations). Ensuring flexibility to accommodate a wide range of mediation types was one of the legislature's stated goals. *See* ORS 36.105 ("The Legislative Assembly declares that it is the purpose of ORS 36.100 to 36.238 to: *** (2) Allow flexible and diverse programs to be developed in this state, to meet specific needs in local areas and to benefit this state as a whole through experiments using a variety of models of peaceful dispute resolution."). The more narrow definition of "mediation" set out in ORS 36.110(5) serves that goal while accommodating the many types of mediation that the legislature understood and expected to occur pursuant to Oregon's mediation statute.

Considering the text of ORS 36.110(5), in context, we conclude that "mediation" includes only that part of the "process" in which a mediator is a participant. Separate interactions between parties and their counsel that occur outside of the mediator's presence and without the mediator's direct involvement are not part of the mediation, even if they are related to it.

## 2. *Definition of "Mediation Communications"*

We turn next to the meaning of the term "mediation communications." ORS 36.110(7) states in part: "'Mediation communications' means: (a) All communications that are made, in the course of or in connection with a mediation, to a mediator, a mediation program or a party to, or any other person present at, the mediation proceedings." On the face of the statute, then, whether something is a "mediation communication," depends on three elements: (1) whether it is a "communication," (2) its connection to a "mediation," and (3) the identity of the recipient.

First, to come within that definition, a statement must be a "communication." Because the statute does not define that term, we look to its plain meaning and ordinary use. *State v. Dickerson*, 356 Or 822, 829, 345 P3d 447 (2015). Looking to the dictionary definition of that term, a "communication" may be either "facts or information communicated," or "the act or action of imparting or transmitting"—in other words, the process by which information is exchanged. *Webster's* at 460. In this case, the parties do not dispute that conversations and disclosures between an attorney and client may be considered "communications." The same is true for statements made by a mediator to disputing parties or other statements made in the course of mediation proceedings.

Second, the communication must be made "in the course of or in connection with a mediation." An activity occurs "in the course of" something else when it occurs as part of a specified process or during a specified period or activity. *Oxford Dictionary of English* 400 (3rd ed 2010). Likewise, the phrase "in connection with" is typically understood to mean a "relationship or association." *Portland Distributing v. Dept. of Rev.*, 307 Or 94, 99, 763 P2d 1189 (1988). *See also Webster's* at 480-81 (word "connection" refers to state of being "connected"—"joined or linked together" or having "parts or elements logically related"). It follows then, that a communication is "in the course of" a mediation when it occurs as part of an actual mediation proceeding, and "in connection with" a mediation when it is made outside of such

proceedings but relates to the substance of the dispute and its resolution process.

The question remains, however, whether the mediation must be ongoing or whether a communication can be "in connection with" a mediation once the dispute has settled. The definition of "mediation," discussed above, suggests that the mediation must be ongoing for a communication to be "in connection with" it, because the legislature expressly limited the temporal scope of "mediation" to activity occurring before "a resolution is agreed to by the parties or the mediation process is terminated." ORS 36.110(5). For that reason, we conclude that communications can only be "in connection with" a mediation for purposes of the statute if the mediation has not yet ended. As such, communications that occur after a settlement agreement is signed are not "mediation communications" within the meaning of ORS 36.110(7)(a) and are neither prohibited from disclosure under ORS 36.220 nor inadmissible under 36.222.[4] A communication is thus "in the course of or in connection with" a mediation only if it is made during and at a mediation proceeding or occurs outside of a proceeding but relates to the substance of the dispute being mediated and is made before a resolution is reached or the process is otherwise terminated.

Third, to be confidential, the communication must be *made to* one of the recipients specified in ORS 36.110(7)(a): "a mediator, a mediation program or a party to, or any other person present at, the mediation proceedings." Interpreting those terms is relatively straightforward. The first three categories are defined in the statute. "'Mediator' means a third party who performs mediation," including that person's agents and employees. ORS 36.110(9). "'Mediation program' means a program through which mediation is made available and includes the director, agents and employees of the program." ORS 36.110(8). A "party" is a person, agency or body who "participates in a mediation and has a direct

_____

[4] It is unclear on the face of plaintiff's complaint when some of the communications in question occurred. The complaint, for example, refers to certain communications that took place on the day the settlement agreement was signed without stating whether they preceded or followed the actual signing. The timing of those communications, as well as whether they occurred at a mediation proceeding, are questions of fact for the trial court.

interest in the controversy that is the subject of the media-tion." ORS 36.234.[5]

Because the fourth category of recipients—"other person[s] present at, the mediation proceedings"—is not defined, we look to the plain and ordinary meaning of the words that form that category. In that context, the term "proceedings" can mean "a particular way of doing or accom-plishing something," "a particular action or course of action" or "a particular thing done." *Webster's* at 1807. Given that "mediation" is the part of the conflict resolution process in which a mediator directly participates, it follows that "medi-ation proceedings" are the actual mediator-facilitated dis-cussions through which mediation occurs, whether they take place at a formal meeting of the parties with the mediator, or at individual sessions with the mediator. As the statute con-templates, third parties may be present at, and participate in those discussions. *See* ORS 36.195(2) (stating that in civil mediations conducted under the provisions of ORS 36.185 to 36.210, "[a]ttorneys and other persons who are not parties to a mediation may be included in mediation discussions at the mediator's discretion, with the consent of the parties"). To fall within the category of an "other person present at, the mediation proceedings" then, a person must be a direct observer or participant in the mediator-facilitated discus-sion in which the communication was made.[6]

The legislative history confirms that interpreta-tion. *See* Exhibit E, Senate Business, Law and Government Committee, SB 160, Feb 27, 1997 (accompanying statement

---

[5] For purposes of applying the mediation statute, the term "party" here can also include other persons, such as attorneys or others who are agents of mediating parties, who speak on behalf of mediating parties. *See* ORS 36.110(5) ("'Mediation' *** includes all contacts between a mediator and any party *or agent of* a party ***." (Emphasis added.)). *See, e.g.*, *Bidwell and Bidwell*, 173 Or App 288, 294, 21 P3d 161 (2001) (holding that written settlement communications between attorneys on behalf of two mediating parties were confidential "media-tion communications" under ORS 36.220).

[6] Defendant argues that his private attorney-client discussions with plaintiff are confidential "mediation communications" because defendant was a "person present at, the mediation proceedings" under ORS 36.110(7)(a). That argument is unavailing because, as discussed, that provision applies only to the extent that the communications were made "in the course of" mediation proceedings. Plaintiff has not argued, and nothing in the record suggests, that the mediator participated in any of those discussions.

of Donna Silverberg, Acting Director of Oregon Dispute Resolution Commission,[7] and official representative of workgroup that drafted SB 160, describing that mediation statute seeks to provide assurance to parties by rendering all mediation communications confidential as a general rule, whether the communications are made to "a mediator, a mediation program or other party or *person present at the mediation session*" (emphasis added)).

Identifying the basic elements of "mediation communications" as set out in the text of ORS 36.110(7)(a) does not end our inquiry, however. To discern whether the kinds of communications at issue in this case fall within the scope of that provision, we must answer a more fundamental question: to *whose* communications does the definition set out in ORS 36.110(7)(a) apply? Because ORS 36.110(7)(a) is written in the passive voice—"'Mediation communications' means all communications that are made…"—the legislature did not explicitly state whose speech it is directed at. *See State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012) (noting that because legislature wrote statutory definition of "aggrieved person" in the passive voice—"a person against whom the interception *was directed*"—who or what does the "directing" is not explicitly stated). Defendant argues that the legislature's use of passive voice in ORS 36.110(7)(a) means that provision was intended to apply to any communication by any person. However, whether that is correct is less clear than the words of the statute, in isolation, might suggest.

The legislature often uses the passive voice in drafting statutes, but its significance for statutory interpretation varies. In some circumstances, we have concluded that the legislature's use of the passive voice conveys its intent that a statute apply more broadly. *See, e.g.*, *Powerex Corp. v. Dept. of Rev.*, 357 Or 40, 46-47, 346 P3d 476 (2015) (use of passive voice in ORS 314.665(2)(a) indicates that application of statute does not depend on identity of actor). At other times,

---

[7] The Oregon Dispute Resolution Commission (ODRC) was the entity charged with providing services in support of the legislative mandates set forth in Oregon's mediation statute. Established by the Oregon legislature in 1989 and funded through 2003, the ODRC's membership included private individuals who worked in the field of alternative dispute resolution, judges, and elected officials. An ORDC workgroup was responsible for drafting the text of the legislation that created the confidentiality provisions in Oregon's current mediation statute.

however, the legislature's use of the passive voice adds nothing to the meaning of a provision and instead generates ambiguity as to how the law should be applied. *See, e.g.*, [State v. Serrano](#), 346 Or 311, 322, 210 P3d 892 (2009) (use of passive voice in OEC 505(1)(a) not reflective of how marital communications privilege intended to operate); *Brentmar v. Jackson County*, 321 Or 481, 487, 900 P2d 1030 (1995) (use of passive voice in land use statute created ambiguity as to who was authorized to act). For the reasons discussed below, we conclude that the legislature did not intend its use of the passive voice in ORS 36.110(7)(a) to bring the statements of all possible speakers within the definition of "mediation communications," but that the legislature intended the statute to apply more narrowly.

Although the legislature did not specify the speakers to whom ORS 36.110(7)(a) applies, as described above, it did specify the persons *to whom* the communication must be made for it to be a "mediation communication."[8] That definition applies only to the extent that a communication is made "in the course of or in connection with a mediation *to* a mediator, mediation program, party to or any other person present at, a mediation proceeding." (Emphasis added.) When a communication is made "in the course of" a mediation, both sides of the communication will ordinarily consist of individuals identified in ORS 36.110(7)(a), because they will be present at the mediation proceedings, physically or by telephone. But when a communication takes place outside of mediation proceedings and is thus only "in connection with" a mediation, it may involve one of the persons identified in the statute and another person not among those listed.

---

[8] In contrast, although California's statute providing for the confidentiality of mediation communications is also stated in the passive voice, the confidentiality of a communication is *not* limited according to the identity of the recipient. *See* Cal Evid Code § 1119(a) ("No evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery * * *."). The Supreme Court of California has concluded that the scope of confidentiality pursuant to California Evidence Code Section 1119 extends to attorney-client communications, even outside the mediation itself. *See Cassel v. Superior Court*, 51 Cal 4th 113, 128, 244 P3d 1080, 1090-91 (Cal 2011) (interpreting rule and holding that communications between a disputant and his or her own counsel are confidential mediation communications, notwithstanding that they occur without either the mediator or other disputants present).

As a result, if ORS 36.110(7)(a) were interpreted to apply to communications made by any person, situations could occur where only half of the conversation is confidential. For example, under that interpretation, in an exchange outside of mediation proceedings between plaintiff (here a mediating party) and defendant (plaintiff's attorney and therefore neither a party, a mediator or mediation program representative, or, in this scenario, a person present at mediation proceedings), every statement pertaining to the mediation made by defendant *to* plaintiff *would be* confidential, but, because of the limitation on the receiving parties in the statute, plaintiff's response would not.[9]

That outcome—the protection of a third party's statements but not those of the mediating party—is fundamentally at odds with the legislature's central goal of protecting the ability of *mediating parties* to speak openly without fear that their words might be used against them later. *See* Tape Recording, Senate Business, Law and Government Committee, SB 160, Feb 27, 1997, Tape 75, Side A (statement of Representative Bryan Johnston, SB 160 sponsor, that fundamental goal of legislation is to protect parties' ability to speak openly in private mediation sessions); Tape Recording, Senate Business, Law and Government Committee, SB 160, Feb 27, 1997, Tape 75, Side A (testimony of Silverberg, describing definition of "mediation communications" as protecting the confidentiality of what parties say in mediation). Thus, because interpreting ORS 36.110(7)(a) to apply to all speakers would lead to results that are contrary to the legislature's fundamental objective of ensuring confidentiality in the first place, we cannot conclude that the legislature intended its use of the passive voice in ORS 36.110(7)(a) to mean that communications made by *any* person may be mediation communications.

If the legislature did not intend ORS 36.110(7)(a) to apply to communications made by any person whatsoever,

---

[9] As previously noted, communications made outside of mediation proceedings by an attorney representing a mediating party could be "mediation communications" if made on that party's behalf. *See* note 5 (discussing application of statutes to persons acting as an agent for a mediating party). However, an attorney does not speak on behalf of a client where, as here, he or she communicates with that client privately for the purpose of facilitating the rendition of professional legal services to that client.

to whose communications did the legislature intend it to apply? To answer that question, we return to the text, placing it against its proper contextual background.

As discussed, "mediation" is a conflict resolution "process" whereby parties attempt to arrive at a mutually acceptable resolution of their dispute. *See* ORS 36.110(5). Within that process, every communication assumes a response. Thus, while the statute's drafters were concerned first and foremost with protecting mediating parties' ability to speak freely, they referred not only to "communications" but also to "mediation discussions" and "conversations." *See* ORS 36.195(2) ("Attorneys and other persons who are not parties to a mediation may be included in mediation discussions."); Tape Recording, Senate Business, Law and Government Committee, SB 160, Feb 27, 1997, Tape 75, Side A (statement of Silverberg, describing how mediation confidentiality is meant to protect the confidentiality of "conversations" that parties have in mediation sessions). Most often, it is the persons indentified in ORS 36.110(7)(a) who make up both sides of those exchanges.

Considering the statutory text in light of that context, the legislature's decision to define "mediation communications" as "[a]ll communications that are *made \*\*\* to* a mediator, a mediation program or a party to, or any other person present at, the mediation proceedings," ORS 36.110(7)(a) (emphasis added), suggests that the legislature intended that provision to apply only to discussions *between* those persons identified in the statute. In other words, to be a confidential mediation communication, a communication must be both *made to* one of the persons listed in ORS 36.110(7)(a) and *made by* one of those same persons.

The statutory provisions for waiver of mediation confidentiality confirm that understanding. In the absence of an applicable exception under ORS 36.220, mediation communications may only be disclosed in a subsequent legal action if certain specified persons agree. Except for the catchall category of third parties who make or receive mediation communications while present at mediation proceedings, those persons who may waive confidentiality are the same ones enumerated in ORS 36.110(7)(a). *See* ORS

36.222(2) ("A party may disclose confidential mediation communications or agreements in any subsequent adjudicative proceeding if all parties to the mediation agree in writing to the disclosure."); ORS 36.222(3) ("A mediator may disclose confidential mediation communications or confidential mediation agreements in a subsequent adjudicatory proceeding if all parties to the mediation, the mediator, and the mediation program, if any, agree in writing to the disclosure."). The facts that the statute allows for confidentiality to be waived, and that the consent of only those persons is required, signal that the speakers to whom the definition of "mediation communications" is meant to apply is similarly limited.

Aside from looking to the text and context of a statute, we may also consider its legislative history to see whether it confirms our understanding of what the legislature intended. *Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 301-05, 337 P3d 768 (2014). Although the legislature did not engage in extensive debate on the issue, the proponents of the legislation did discuss the meaning of "mediation communications" and how the confidentiality rules set out in ORS 36.220 and 36.222 would apply. As already noted, the legislature expected and intended that communications that disputing parties make in the course of mediation—and those that mediators make in response—would be covered. *See, e.g.*, Tape Recording, Senate Business, Law and Government Committee, SB 160, Feb 27, 1997, Tape 75, Side A (statement of Silverberg that goal of law is to "guarantee consumers of mediation services that the conversations and communications they have in a mediation session are confidential" and that mediation should provide "a confidential setting" for disputants to "air their differences."). Likewise, the legislative history indicates that the legislature understood the scope of confidentiality to extend to communications made by other participants in mediation proceedings. *See* Tape Recording, Senate Business, Law and Government Committee, SB 160, Feb 27, 1997, Tape 74, Side B (testimony of Beghtol noting that other persons, such as friends and family, who participate in mediation sessions will be "included under the confidentiality umbrella"). Nothing in the legislative history, however, suggests that the legislature intended ORS 36.110(7)(a) to apply to statements made

by other persons not identified in the statute, such as an attorney giving private advice to his or her client outside of any mediation proceeding.

In sum, considering the text of ORS 36.110(7)(a) in light of its context and history, we conclude that the term "mediation communications" includes only communications exchanged between parties, mediators, representatives of a mediation program, and other persons while present at mediation proceedings, that occur during the time that the mediation is underway and relate to the substance of the dispute being mediated. Private communications between a mediating party and his or her attorney outside of mediation proceedings, however, are not "mediation communications" as defined in the statute, even if integrally related to a mediation.

3. *Application of the Confidentiality Provisions of the Mediation Statute*

We now return to the question of whether the trial court erred in granting defendant's motion to strike. As already discussed, the trial court struck several categories of allegations from plaintiff's complaint. First, the trial court struck an allegation that disclosed a communication from the mediator to the parties: that after the failed mediation conference, the mediator suggested a particular settlement amount. Second, the trial court struck an allegation that pertained to communications apparently made by defendant during the formal mediation session: that defendant had failed "to reasonably advocate for plaintiff." Third, the trial court struck allegations that described private attorney-client discussions that occurred between plaintiff and defendant before and after the mediation proceedings, including that defendant "pressured plaintiff into eventually agreeing to the mediator's proposal" and that defendant gave certain advice to plaintiff regarding the effectiveness and enforceability of the settlement agreement.

We have concluded that statements that mediators make to parties regarding their dispute are "mediation communications" within the meaning of ORS 36.110(7)(a) and ORS 36.220, and thus inadmissible under ORS 36.222. The trial court therefore was correct in striking the allegation

in plaintiff's complaint that disclosed the mediator's suggestion to the parties of settlement terms.

Likewise, statements that an attorney makes in the course of participating in mediation proceedings are also "mediation communications." Such statements are made by "a person present at, the mediation proceedings," in the course of mediation, to persons listed in ORS 36.110(7)(a)— the mediator, parties to the mediation, or persons present at the "mediation proceedings." *See also* ORS 36.195(2) (providing that attorneys may participate in civil mediation proceedings). The allegation that defendant failed "to reasonably advocate for plaintiff in the mediation" appears to refer to defendant's conduct in the formal mediation session between plaintiff and his former employer. To the extent that is true, the trial court was correct in striking it.[10] If that allegation refers instead to communications made outside of a mediation proceeding, the trial court was still correct if defendant was speaking on plaintiff's behalf in connection with the mediation to qualifying recipients. *See* ORS 36.110(5) ("'Mediation' *** includes all contacts between a mediator and any party *or agent of* a party ***." (Emphasis added.)). *See, e.g.*, [*Bidwell and Bidwell*](), 173 Or App 288, 294, 21 P3d 161 (2001) (holding that written settlement communications between attorneys on behalf of two mediating parties were confidential "mediation communications" under ORS 36.220). On remand, the trial court may resolve any factual dispute as to the nature of that allegation.

The trial court erred, however, in striking the third category of allegations from plaintiff's complaint, pertaining to private attorney-client discussions between plaintiff

---

[10] We recognize that our interpretation of the relevant Oregon statutes may make it difficult, in some circumstances, for clients to pursue legal malpractice claims against their attorneys for work in connection with mediations. After Oregon's mediation statute was enacted, that issue was considered by the drafters of the Uniform Mediation Act. The Uniform Act provides that mediation communications that would otherwise be confidential may be disclosed for purposes of litigating a subsequent attorney malpractice action. *See* Uniform Mediation Act § 6(a)(6) (2001) (providing exception to mediation privilege where mediation communications are "sought or offered to prove or disprove a claim or complaint of professional misconduct or malpractice filed against a mediation party, nonparty participant, or representative of a party based on conduct occurring during a mediation"). The legislature may wish to consider statutory changes based on the Uniform Mediation Act.

and defendant. Private discussions between a mediating party and his or her attorney that occur *outside* mediation proceedings, whether before or after those proceedings, are not "mediation communications" within the meaning of ORS 36.110(7)(a), even if they do relate to what transpires in the mediation. Therefore, because those allegations are neither confidential under ORS 36.220 nor inadmissible under ORS 36.222, the trial court erred in striking them from plaintiff's complaint.[11]

## B.  *Dismissal of Plaintiff's Complaint*

We turn to the trial court's order dismissing plaintiff's complaint with prejudice. When this case was before the trial court, plaintiff neither filed, nor sought leave to file, an amended complaint at any point, before or after the final order of judgment dismissing the complaint with prejudice was entered. However, plaintiff argued in the Court of Appeals that the trial court erred in dismissing the complaint with prejudice because ORCP 23 A allows a plaintiff to amend its complaint once as a matter of right, before a responsive pleading has been served and a motion to dismiss is not a responsive pleading. *See Balboa Apartments v. Patrick*, 351 Or 205, 212, 263 P3d 1011 (2011) (so stating). The Court of Appeals agreed. Citing recent decisions of that court interpreting ORCP 23 A, the Court of Appeals held that the trial court erred because "plaintiff had to be allowed an opportunity to amend [the] complaint once, as a matter of right, before the trial court dismissed [the] complaint with prejudice." *Alfieri*, 263 Or App at 504 (citing *O'Neil v. Martin*, 258 Or App 819, 838, 312 P3d 538 (2013), *rev den* 355 Or 381 (2014)).[12]

---

[11] While private attorney-client discussions that occur outside of mediation proceedings are not confidential "mediation communications," they may be privileged under OEC Rule 503. *See* OEC 503(1)-(3) (describing scope of privilege). The attorney-client privilege, however, may not be claimed by an attorney when the client seeks disclosure. *See* OEC 503(3) (privilege may only be claimed by the client or some other person on the client's behalf). Further, there is no privilege, "[a]s to a communication relevant to an issue of breach of duty by the lawyer to the client or by the client to the lawyer." OEC 503(4)(c).

[12] The Court of Appeals relied primarily on two cases: *Lamka v. KeyBank*, 250 Or App 486, 281 P3d 639 (2012), and *O'Neil v. Martin*, 258 Or App 819, 822, 312 P3d 538 (2013), *rev den*, 355 Or 381 (2014). For the reasons discussed in this opinion, those cases were wrongly decided.

As we explain below, we reverse: A party is not entitled to amend its complaint once the court has allowed a motion to dismiss the complaint in its entirety under ORCP 21. Rather, once such a motion has been granted, the right to amend as a matter of course is extinguished and a plaintiff must seek leave to amend, which the trial court may grant in its discretion.

We begin with the text of the applicable rules of civil procedure. In this case, two provisions are especially relevant. ORCP 23 A establishes the general rule for when a party is entitled to amend a pleading. It provides in part: "A pleading may be amended by a party once as a matter of course at any time before a responsive pleading is served \*\*\*." As noted, that provision is understood to confer on parties an absolute right to amend within the timeframe prescribed. Because a motion to dismiss is not a responsive pleading, *see* ORCP 13 B (listing types of pleadings allowed in action), that rule seems to apply. *See also* ORCP 21 A ("Every defense, in law or fact, to a claim for relief in any pleading \*\*\* shall be asserted in the responsive pleading thereto, except that the following defenses may at the option of the pleader be made by motion to dismiss \*\*\*."). However, when a motion to dismiss has been granted, ORCP 25 A is triggered. It provides in part: "When a motion to dismiss or a motion to strike an entire pleading or a motion for a judgment on the pleadings under Rule 21 is allowed, the court may, upon such terms as may be proper, allow the party to amend the pleading."

In this case, those two rules—ORCP 23 A and ORCP 25 A—appear to conflict. ORCP 23 A gives parties an unqualified right to amend once as a matter of course, which continues until a responsive pleading has been served. ORCP 25 A, however, provides that once a motion to dismiss a complaint in its entirety has been allowed, the court may "allow" an amendment. The word "allow" in this context is a legal term of art, meaning "to give consent to," "approve," or "to grant permission." *Black's Law Dictionary* 92 (10th ed 2014). If "the court may, upon such terms as may be proper, allow the party to amend," one can infer that the court may also *disallow* an amendment. *See Friends of Columbia Gorge v. Columbia River (S055915)*, 346 Or 415, 426-27, 212

P3d 1243 (2009) (stating rule that unless context is ambiguous, we interpret the word "may" according to its ordinary usage, as conveying discretionary authority). Thus, although the text does not say so expressly, ORCP 25 A suggests—contrary to the rule in ORCP 23 A—that a plaintiff may no longer amend as a matter of right once a court has granted a motion to dismiss its entire complaint.

As a basic rule of statutory construction, we construe statutes to give effect, if possible, to all their provisions. *Crystal Communications, Inc. v. Dept. of Rev.*, 353 Or 300, 311, 297 P3d 1256 (2013). *See also* ORS 174.010 ("[W]here there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."). Given the apparent inconsistency between ORCP 23 A and ORCP 25 A, we must determine whether they can be harmonized.

Analyzing the text, in context, we conclude that ORCP 23 A and ORCP 25 A were intended to operate as independent, alternative provisions. Although both rules relate to the same subject—the procedure by which parties may amend their pleadings—they apply in different circumstances. ORCP 23 A applies to the period between when a pleading—whether a complaint or answer—is served until a responsive pleading is served, or if none is permitted, 20 days has elapsed. *See* ORCP 23 A (describing timeframe when a party may amend its pleading "once as a matter of course"). In contrast, ORCP 25 A is triggered only when certain motions under ORCP 21 have been filed and granted. *See* ORCP 25 A (stating that rule applies "when a motion to dismiss or a motion to strike an entire pleading or a motion for a judgment on the pleadings under ORCP 21 is allowed"). Under those circumstances, a responsive pleading from the moving party is no longer required because the court has determined that all of the claims fail as a matter of law. As a result, the rule set out in ORCP 23 A that a party may amend once as a matter of course before a responsive pleading is served is inapplicable. We therefore conclude that ORCP 25 A, providing that a *court* "may" allow a party to amend when certain motions, including a motion to dismiss, are granted, operates as an exception to the more general rule in ORCP 23 A that a *party* may

amend as a matter of course before a responsive pleading has been served.

That conclusion is supported by the text of ORCP 25 B, a related provision that sets out the rules for when a party that amends after a motion waives certain defenses or objections. ORCP 25 B specifically describes the avenues by which a party may amend its complaint:

> "If a pleading is amended, *whether pursuant to sections A or B of Rule 23 or section A of this rule or pursuant to other rule or statute*, a party who has filed and received a court's ruling on any motion directed to the preceding pleading does not waive any defenses or objections asserted in such motion by failing to reassert them against the amended pleading."

(Emphasis added.) As the text of ORCP 25 B illustrates, a party can amend its pleadings in a variety of ways, including: as a matter of course before a responsive pleading is served; with leave of the court after a responsive pleading has been served; by express or implied consent when additional issues are raised; and with leave of the court after certain motions under ORCP 21 have been granted. Although more than one avenue to amendment might occur over the life of a case, each operates independently of the others when it is invoked by a party seeking to amend.

That ORCP 23 A and ORCP 25 A were not intended to apply simultaneously, but to operate as alternative rules for the amendment of pleadings under different circumstances, is also supported by the text of ORCP 21 A, which governs how motions may be made and the court's authority to respond. It provides in part: "If a court grants a motion to dismiss, the court may enter judgment in favor of the moving party *or grant leave to file an amended complaint*." (Emphasis added.) With the inclusion of those words, the drafters sought to make clear the court's discretionary power to determine whether, after granting a motion to dismiss, to allow the plaintiff to replead, or whether to instead enter a judgment.[13] *See* Council on Court Procedures, (1982

---

[13] Initially, the wording of that provision differed slightly. *See* ORCP 21 A (1982) ("When a motion to dismiss has been granted, judgment shall be entered in favor of the moving party unless the court has given leave to file an amended

promulgation), Rule 21, comment ("To cure any ambiguity in the ability of the court to allow leave to amend after a motion to dismiss has been granted, Rule 21 A will be amended to specifically refer to leave to amend under ORCP 25. The amendment would also make it clear that judgment may be entered if leave to amend is not granted.").[14]

The history of ORCP 25 A confirms that it was intended to act as an exception to the general rule under ORCP 23 A that a party may amend as a matter of course before a responsive pleading is served. Although the first part of ORCP 23 A was taken almost verbatim from the text of FRCP 15(a) as it existed when the Oregon Rules of Civil Procedure were first promulgated,[15] *see* Council on Court Procedures, Proposed Rules of Civil Procedure, Rule 23 (comment), in *Legislative History Relating to Promulgation of Oregon Rules of Civil Procedure*, *Vol. 6*, 64 (1979) (discussing history of rule), the words in ORCP 25 A were drawn from an existing Oregon statute for which no analogous federal rule existed. *See id.* (describing statutory source of that part of rule).[16] The provision from which ORCP 25 A was drawn, *former* ORS 16.380, provided that if a demurrer[17]

---

pleading under Rule 25."). When the Council on Court Procedures changed ORCP 21 A to its present form, it intended to clarify, not modify, the options available to the court upon the grant of a motion to dismiss. *See* Council on Court Procedures, (2000 promulgation), Rule 21, comment (describing effect of changes), *available at* http://counciloncourtprocedures.org/Content/Legislative_History_of_Rules/ORCP_21_promulgations_all_years.pdf (accessed Dec 2, 2015).

[14] *Available at* http://counciloncourtprocedures.org/Content/Legislative_History_of_Rules/ORCP_21_promulgations_all_years.pdf (accessed Dec 2, 2015).

[15] In 1978, FRCP 15(a) read as follows: "A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend at any time within 20 days after it is served." FRCP 15(a) (1977). FRCP 15(a) has since been amended and that language altered.

[16] Originally, the text of ORCP Rule 25 A was set out in ORCP 23 D. Fredric Merrill, *Oregon Rules of Civil Procedure: 1984 Handbook* 55 (1984). In both its original form as ORCP 23 D and as it exists today in ORCP 25 A, the relevant text (the first sentence of the rule) remains the same. *Compare* Council on Court Procedures, Proposed Rules of Civil Procedure, Rule 23, in *Legislative History Relating to Promulgation of Oregon Rules of Civil Procedure*, *Vol. 6*, 63 (1979) (original text of ORCP 23 D) *with* ORCP 25 A.

[17] Before the promulgation of the Oregon Rules of Civil Procedure, parties would file a "demurrer" rather than a motion to dismiss for failure to state a claim. *See* Council on Court Procedures, Commentary to Oregon Rules of Civil

was sustained, "the court may in its discretion allow the party to amend the pleading demurred to, upon such terms as may be proper." *Former* ORS 16.380 (1977), *repealed by* Or Laws 1979, ch 284, § 199.[18] Accordingly, once the court had determined that a complaint failed to state a claim for relief, it had discretion as to whether to allow the plaintiff to amend. *See Speciale v. Tektronix*, 38 Or App 441, 445, 590 P2d 734 (1979) (noting that under *former* ORS 16.380, once demurrer had been granted, "an application for leave to plead over [was] addressed to the discretion of the trial court"). Thus, while federal courts had interpreted FRCP 15(a) as granting plaintiffs an unqualified right to amend as a matter of course before a responsive pleading was served, even if a motion to dismiss had been granted, *see* Wright and Miller, *Federal Practice and Procedure Vol. 6* § 1483 (1971) (describing majority rule), the drafters of the Oregon Rules of Civil Procedure declined to adopt such a rule in Oregon. Rather, by adopting the one set out in ORCP 25 A, they chose to preserve the court's discretion to allow, or disallow, the amendment of a dismissed pleading. That intent is reflected in the original commentary to that rule, which states: "If a motion to strike an entire pleading or to dismiss is allowed, the court retains discretion to allow *or not allow* an amended pleading." Council on Court Procedures, Commentary to Oregon Rules of Civil Procedure Pleading, 14-15, in *Legislative History Relating to Promulgation of Oregon Rules of Civil Procedure*, *Vol. 3* (1979) (emphasis added).[19]

---

Procedure Pleading, 9-10, in *Legislative History Relating to Promulgation of the Oregon Rules of Civil Procedure*, *Vol. 3* (1979) (describing change in terminology). As a practical matter, a demurrer is equivalent to a motion to dismiss today. *See Black's Law Dictionary* at 526 (describing demurrer as "a pleading stating that although the facts alleged in a complaint may be true, they are insufficient for the plaintiff to state a claim for relief and for the defendant to frame an answer").

[18] *Former* ORS 16.380 provides in full: "After a decision upon a demurrer, if it is overruled, and it appears that the demurrer was interposed in good faith, the court may in its discretion allow the party to plead over upon such terms as may be proper. If the demurrer is sustained, the court may in its discretion allow the party to amend the pleading demurred to, upon such terms as may be proper."

[19] Before the Oregon Rules of Civil Procedure were finalized, they were organized according to a lettered scheme. Originally, the rule set out today in ORCP 25 A was draft Rule L(4). The relevant portion of that rule remained the same in all subsequent drafts of the rule.

We conclude, therefore, that ORCP 25 A was intended to operate as an exception to the general rule in ORCP 23 A that a party may amend once as a matter of right before a responsive pleading has been served. Even after a motion under ORCP 21 is filed, a plaintiff remains free to amend its complaint once as a matter of right. However, once the court has granted a motion to dismiss or strike an entire pleading, or a motion for judgment on the pleadings under Rule 21 is otherwise allowed, a plaintiff may no longer amend as a matter of course, but must seek leave of the court to do so. If leave is sought, the court, applying the same principles that guide the amendment of pleadings after a responsive pleading has been served, may decide whether to allow it. In such a case, "leave shall be freely given when justice so requires." ORCP 23 A. *See, e.g.*, *Family Bank of Commerce v. Nelson*, 72 Or App 739, 746, 697 P2d 216 (1985), *rev den*, 299 Or 443 (1985) (reversing as abuse of discretion trial court denial of leave to amend complaint where defendant failed to demonstrate prejudice). However, when ORCP 25 A is triggered, for example, by the grant of a motion to dismiss, and the plaintiff does not seek leave to amend, the court may, in its discretion, order the complaint dismissed with prejudice.

We reverse the Court of Appeals' determination that the trial court erred in dismissing plaintiff's complaint with prejudice. The case must be remanded, however, given our conclusion that the trial court applied an incorrect legal standard in ruling on defendant's motion to strike. On remand, the trial court will have the opportunity to apply the legal standards set out in this opinion to the motion to strike and then consider whether defendant's motion to dismiss is well taken. If the trial court again dismisses the complaint in its entirety, plaintiff may seek leave to amend. If the plaintiff does so, the trial court may then decide, in its discretion, whether to allow the amendment.

For the reasons discussed above, the decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.